[The decree in this case was affirmed by the Court of Appeals.]

PETER W. CRAIN ET AL.
vs.                              } DECEMBER TERM, 1847.
BARNES AND FERGUSSON.

[GUARDIAN AND WARD—JURISDICTION—PRACTICE—PROOF OF PAYMENT.]

A PROCEEDING by the representatives of a ward against the executors of a guardian, to recover a legacy bequeathed to the ward, and which the guardian had received from the executors of the testator who made the bequest, is clearly within the jurisdiction of a court of equity.

The relation of guardian and ward, and the rights and obligations which grow out of it, are peculiarly within the jurisdiction of a court of equity, and its power to afford a remedy for a breach of the trust cannot be questioned, unless it has been taken away by some express statutory enactment.

Every guardian, however, appointed, is responsible in equity for his conduct, and may be removed for misbehavior.

Where the Court of Chancery has original jurisdiction, it is not deprived of it because the courts of law, by statutory enactment, may have power over the same subject, when the enactments giving them authority contain no provisions depriving this court of its ancient jurisdiction.

It is too late to urge the objection of misjoinder of plaintiffs, when the case is ready for decision upon the merits, when there is no demurrer, and the answer takes no such defence.

Courts of equity are not subject to those strict technical rules, which in other courts are sometimes found in the way and difficult to surmount. The remedies here are moulded so as to reach the real merits of the controversy, and justice will not be suffered to be entangled in a web of technicalities.

The omission of the prayer for the specific relief, is no reason why, under the general prayer, the complainants may not have such relief, as the case alleged and proved may entitle them to.

The only limitation upon the power of the court to grant relief under the general prayer, is, that it must be agreeable to the case made by the bill, and not different from or inconsistent with it.

As evidence of payment of a legacy due to a ward, the defendants relied upon a memorandum in the hand writing of C., the husband of the ward, by which he charged himself with "amount of B's draft of $500." (B. being the guardian.) The draft was not produced, and there was no proof of its payment, or on what account it was drawn. They further claimed a credit of $1500, being the amount of a check by B. on the Bank of Baltimore, payable to C. or bearer, which was paid by the bank, but to whom the money was paid, did not appear. HELD—

That this evidence of payment was wholly inconclusive and unsatisfactory, and that it would be a departure from the rules established for the ascertainment of truth, to give it the effect for which the defendants insist.

Courts of justice are not at liberty to indulge in wild, irrational conjectures, or licentious speculations, but must act upon fixed and settled rules. And it is far better that individuals should occasionally suffer, than that principles, which time and experience have shown to be essential to the ascertainment of truth, should be broken down or disregarded.

Where no time is fixed by the will for the payment of a legacy, it will bear interest from the expiration of one year after the death of the testator.

---

[By the last will and testament of Samuel Bond, dated 8th July, 1818, Mary Clarissa Bond Barnes, was bequeathed a legacy of $3000, and also one-fourth of his slaves. John Barnes, her father, and surviving executor of the deceased, passed his first and final account on the 14th April, 1830, showing a balance of $38,338 16 in his hands for distribution amongst the parties entitled. As guardian to his daughter, he was awarded by the Orphan's Court a proportion of the slaves, estimated at $2337 50, and the pecuniary legacy of $3000. Mary C. B. Barnes, intermarried with William P. Compton, in the year, 1825, and died in the year 1834, leaving her husband, and an infant son, Barnes Compton, surviving her, of whom the former died in 1837. At his death, John Barnes became guardian of the infant, and bonded as such. Said Barnes died also, in the year 1844, and by his will appointed the defendants, Richard Barnes, and Robert Fergusson, his executors. Letters of administration on the estate of Mary C. B. Compton were subsequently granted to Peter W. Crain, and Henry G. S. Key, who in their representative capacity, and as the next friend, of said Barnes Compton, sued the executors of John Barnes for the pecuniary legacy which they allege to be still due; admitting the receipt by Compton and wife, of her share of the negroes.

The defence made by the answer was, payment in whole, or in part, and sundry objections to the form of the bill, were urged, at the hearing. In evidence of payment, the defendants rely partly upon a paper filed, containing a memorandum in Compton's hand writing, by which he charges himself with "amount of Barnes' draft $500," which draft was not produced nor was any proof offered of its payment, or to show upon what account it was drawn. Another credit of $1500, was also claimed by the defendants, the character of which will appear in the Chancellor's opinion.

The first point noticed by the Chancellor, was the alleged want of jurisdiction in the court to decree a payment of the legacy, the courts of law being fully competent to give relief, in reference to which, he said :]

The Chancellor:

Considering this as the will of the administrators of Mrs. Compton, and that the right to recover, if it exists at all, is in them, it is a proceeding, the representatives of a ward, against the executors of a guardian, to recover a legacy which had been bequeathed the ward, and which the guardian in that capacity had received from the executors of the testator, by whom the bequest was made.

It is a bill, then, in equity, by a ward against her guardian— that is by a *cestuique trust*, against the trustee. The relation of guardian and ward constituting, as Mr. Justice Story says, the most important and delicate of trusts, and as this relation and the rights and obligations which grow out of it, are peculiarly within the jurisdiction of this court, its power to afford a remedy for a breach of the trust cannot be denied, unless it can be clearly shown to have been taken away by some express statutory enactment.

In the matter of *Andrews*, 1 *Johns. Chan. Rep.*, 99, Chancellor Kent says, that every guardian, however appointed, is responsible in equity for his conduct, and may be removed for misbehavior, and that a testamentary, or statute guardian, is as much under the superintendance of the Court of Chancery as the guardian in socage.

The jurisdiction of the courts of equity to superintend the administration or assets, and to secure the payment of what may be left, after the discharge of debts, &c., either to legatees or distributees, seems to be as firmly established ; for, notwithstanding the act of parliament which gives to the spiritual court, in England, authority to decree a distribution of the residue, it has been held that as the act does not contain negative words, the jurisdiction of the Court of Chancery was not taken away. 1 *Story Eq.*, sec. 542.

And in the case of *Drury* vs. *Conner*, 1 *H. & G.*, 220, the right of a ward to proceed in equity against his guardian, is treated as a right, not open to controversy. In this case, it is urged, that there is no necessity for an account, because the amount claimed is specific and liquidated, and that the remedy at law might be prosecuted upon the bond of the guardian, without difficulty or embarrassment. It will be remembered, however, that though the amount claimed by the bill is liquidated, an account of the assets may be necessary, there being nothing at this time in the case to show them to be sufficient. But the jurisdiction of the court is not put upon this ground, but upon the ground that this is one of those cases, in which this court having original jurisdiction, is not deprived of it, because the courts of law by statutory enactment may have power over the same subject; the enactments giving them authority, containing no provisions depriving this court of its ancient jurisdiction. Indeed, the remedy in this court is so much more complete, and the power of the court of law, in many cases involving the administration of assets, so entirely inadequate, that it would be matter of serious regret, if the conferring of jurisdiction upon the latter, should have the effect of ousting the former.

The next objection urged to a decree upon this bill is, that the complainants are improperly joined; and it is contended that this is an objection which may be taken at the hearing, though there is no demurrer, and the answer takes no such defence.

There may be cases in which an objection of this descrip-

tion will be allowed at the hearing, though not raised upon the pleading, but certainly the general rule is, that it comes too late, if deferred to the hearing of the cause. *Waterton* vs. *Cowen*, 4 *Paige*, 510; 1 *Daniel's Ch.*, *Prac.*, 350. Mr. Justice Story says, in cases of misjoinder of plaintiffs, the objection ought to be taken by demurrer; for if not so taken, and the court proceeds to a hearing upon the merits, it will be disregarded, at least if it does not materially affect the propriety of the decree. *Story's Equity Plead.*, secs. 540, 544. In the case before the court, it is not seen how the misjoinder of the parties can affect the propriety of the decree.

There is no conflict between them, the beneficial interest being admitted by the bill to be in Barnes Compton, the minor, and the administrator of his mother having only become such and united in the suit, that a full indemnity might be given the defendants, upon the payment of the legacy.

The case of *Rhodes* vs. *Wharbutton*, 6 *Sim. resp.*, 617, is express to show, that such an association of parties as complainants, is not even faulty upon demurrer.

Courts of equity are not, in the dispensation of justice, subject to those strict technical rules, which in other courts are sometimes found in the way, and so difficult to surmount. The remedies here are moulded, so as to reach, if practicable, the real merits of the controversy, and justice will not be suffered to be entangled in a web of technicalities. If such a decree can be put upon the record as will meet the substantial justice of the case, it will be done. The Court of Appeals of this state, in the case of *McCormick* vs. *Gibbon*, 3 *Gill & Johnson*, 12, shows, conclusively, that a defence like the present, cannot at all events be brought forward for the first time at this stage of the proceedings, when if presented at an earlier period the objection could have been removed by an amendment of the bill. In the case referred to, the court say, a decree may give relief to both complainants, or separate and distinct relief to each. As to one, the bill may be dismissed, whilst full relief is granted to the other. And that the same principle applies to the defendants, is also stated in the same case, the relief being

joint, or several, as may be required to meet the justice of the controversy, as disclosed by the evidence.

Upon this objection, then, I am clearly of opinion, that even if it could have been successfully urged, it is too late now, when the case is ready for decision upon the merits.

The next objection of the defendants to the passing of a decree upon this bill, is, that the relief brought by it, is improperly prayed, there being no special prayer. The prayer is, that the plaintiffs may have such relief as equity may require, and this, it is said, is insufficient, standing by itself, unaccompanied by any special prayer.

The object of all pleading is, to give to parties notice of the ground of claim, and defence, or upon which demands are asserted or resisted, and when this is done, the object of the rules of pleading is attained. Now, there can be no doubt that the defendants in this case had notice by the bill, of the relief which was sought against them. They know that the object of the complainants was to make them pay this legacy; and they defend themselves against the demand, by stating, in their answer, that it had been wholly or partially paid.

They cannot, therefore, complain that they have been taken by surprise, when the relief, sought under the general prayer of this bill in the identical relief against which the answer sets up the defence.

Upon principle, therefore, it would seem very obvious, that after having presented this issue, and gone to trial upon it, upon the evidence, the defendants should not now be permitted to say that the bill is defective in this respect.

But, independently of principle, it seems very clear upon authority, that the objection cannot be sustained. The only limitation upon the power of the court to grant relief under the the general prayer is, that it must be agreeable to the case made by the bill, and not different from, or inconsistent with it. *Chambers* vs. *Chalmers*, 6 *H. & J.*, 29.

In *Bentley* vs. *Cowman*, 6 *G. & J.*, 152, the Court of Appeals say, that the extent and character of the relief which may be granted under the general prayer, depends upon the facts

charged in the bill. And in the case of *Gibson* vs. *Mc Cormick*, 10 *Gill & Johns.*, 108, the same tribunal affirms the rule to be unquestionable, that if a complainant cannot obtain the specific relief for which he prays, he may obtain any relief consistent therewith, warranted by the allegations of his bill, provided it contains a prayer for general relief.

If then the court may upon a bill containing a specific prayer for relief refuse that specific relief, and under the general prayer, grant such relief as may be warranted by the case made by the bill, and as may not be inconsistent with the special prayer, no reason can be perceived, why in the absence of any special prayer, the court shall not be at liberty to give the complainant such redress as the case made by his bill may entitle him to.

In *Story's Equity Pleadings*, sec. 41, it is stated, that as a general rule, the general prayer alone is sufficient, though there are exceptions; such for example as the remedy by injunction, which, for special reasons, will never be granted, unless expressly asked for, not only in the prayer for relief, but in the prayer of process. And in the case of *Cook* vs. *Martyn*, 2 *Atk.*, 3, Lord Hardwicke said, the general prayer, standing by itself, was quite sufficient. In *Grimes* vs. *French, ibid.*, 141, it was decided by the same Chancellor, "that though you pray general relief by your bill, you may at the bar pray particular relief, that is agreeable to the case made by the bill; but you cannot pray a particular relief which is entirely different from the case."

The same question was brought before the Vice-Chancellor, Sir John Leach, in the case of *Wilkinson* vs. *Beall et al.*, 4 *Madd. Resp.*, 408, who observed, "that if a party prays a particular relief, to which he is not entitled, he may nevertheless under the prayer for general relief, have such relief as he is entitled to upon the case alleged and proved; and that he could not be in a worse situation, because he had not prayed a particular relief, to which he was not entitled."

I am, therefore, of opinion, that the omission in this bill of the particular prayer, is no reason why, under the general prayer, the complainants may not have such relief, as the case alleged, and proved may entitle them to.

The questions of form being disposed of, it remains briefly to consider the case upon its merits, as disclosed by the evidence.

The issue presented by the pleading is, payment, or non payment, and the *onus* of that issue is upon the defendants.

Their answer, from the nature of the case, is not evidence, because they cannot have, and do not, indeed, pretend to have, any personal knowledge upon the subject, and speak only of their impressions founded upon circumstances, which it is presumed are laid before the court in the testimony.

It appears from a book indorsed "accounts of John Barnes, surviving executor of Samuel Bond," filed by the defendants, that John Barnes did, as guardian to Mary C. B. Barnes, his daughter, receive her proportion of the negroes, and the pecuniary legacy of three thousand dollars bequeathed her by the testator, Samuel Bond, and the defendants, therefore, as the executors of the said Barnes must be decreed to pay that legacy, unless they have succeeded in proving payment of it in whole or in part.

----

[The Chancellor, after alluding to the draft for $500, mentioned above, said :]

----

It is possible, certainly, that it may have been a draft by Compton on Barnes, and that the latter may have accepted and paid in part discharge of the legacy ; but looking to the paper itself, and in the absence of the draft, which, if paid, ought to have been in the possession of Barnes, it seems to me, it would be a departure from those rules which have been established for the ascertainment of truth, to give it the effect for which the defendants insist.

The defendants also claim a credit for the sum of fifteen hundred dollars, being the amount of a check by John Barnes, on the Bank of Baltimore, dated the 25th of October, 1831, drawn payable to William P. Compton, or bearer, and which appears, by the evidence, to have been paid by the bank on the day following. It also appears, by the evidence of the bank officer,

that the check for the precise balance standing to the credit of Mrs. Barnes, but to whom the money was paid, does not appear, and it is very certain, that the check authorized any bearer to receive it, it being, in effect, payable to bearer. Now, in this state of the case, can this court undertake to say, that this sum of fifteen hundred dollars was paid by Barnes to Compton, on account of the legacy bequeathed by Bond to Mary C. B. Barnes ?

It has been said by high authority, that courts of justice are not at liberty to indulge in wild irrational conjectures, or licentious speculation. They must act upon fixed and settled rules, or the rights of persons and property, for the preservation of which they are instituted, will be exposed to painful uncertainty, or involved in inextricable confusion. I admit, that a rigid adherance to those rules may sometimes work injustice in particular cases, but it is far better that individuals should occasionally suffer, than that principles, which time and experience have shown to be essential to the ascertainment of truth, shall be broken down, or disregarded.

It is certainly possible, that these two sums of five hundred and fifteen hundred dollars, may have been paid on account of this legacy, and if so, the estate of Mr. Barnes is injured by the refusal of the court to allow credit for them?

But who is to blame for it? Surely himself in neglecting those ordinary precautions which are usually observed in the transaction of business. He took no receipts. He passed no account as guardian claiming credits. He made no entry in his books, or any memorandum among his papers (so far as the proof shows) of any such payments. The written evidence relied upon, together with the parol proof of Mr. Stone, is wholly inconclusive and unsatisfactory ; and I, therefore, feel it to be my duty not to give it the weight attached to it.

The court, therefore, will sign an order, referring this case to the Auditor, with directions to state an account, in which the defendants, as the executors of the late John Barnes, will be charged with the pecuniary legacy bequeathed by the late Samuel Bond to Mary C. B. Barnes, afterwards Mary C. B.

Compton, with interest from the expiration of one year after the death of the testator, in conformity with the general rule upon the subject of interest when no time of payment is named by the will, the said sum, with the interest to be paid to the complainants, Crain and Key, as the administrators of the said Mary C. B. Compton. The Auditor will be also directed to take an account of the assets of the estate of the said John Barnes, in the hands of his executors, from the pleadings and proofs now in the cause, and such further proofs as may be laid before him by a day to be limited in the order, for the purpose of ascertaining whether there shall be any abatement of said legacy, on account of a deficiency of assets. He will also state an account between the administrators of the said Mary C. B. Compton, and the minors of Barnes to the end, that such final disposition may be made of the case as the rights of the parties may render expedient and proper.

[This order was affirmed on appeal.]