## WILLIAM G. SCARLETT vs. SAMUEL STEIN.

*Contract for the Sale of land—How to ascertain when Time is a material Element of the Contract. Sufficiency under the Statute of Frauds of description of the land sold—Plats— Fraudulent representation—Evidence—Instructions to the Jury.*

A question whether or not time was of the essence of a written contract, settled by a reference to the circumstances attending its execution, and the subsequent conduct of the parties.

In an action on a contract for the purchase of land, brought by the vendor against the purchaser, it is error to exclude from the jury, evidence offered by the purchaser tending to prove, that he had been induced to make the purchase by the fraudulent representations of the vendor.

Although such evidence should be flatly contradicted by that of the vendor, the weight of the evidence, and the credibility of the witnesses, were questions exclusively for the determination of the jury; and it would be error in the Court to instruct the jury, that there was no evidence from which they could find *fraud* in the transaction.

The contract of purchase was signed June 22nd, 1869, and a deed of conveyance was tendered by the vendor, June 10th, 1870. There was no demand by the purchaser for a conveyance of the title prior to the day on which the deed was tendered, nor was there any offer to pay the purchase money, or any proof that the vendor was injured by the delay. HELD:

That the deed was tendered within a reasonable time.

Whether it was the duty of the vendor to tender a conveyance of the title *prior to a tender* of the purchase money by the purchaser—*Quære?*

A description of the property in the contract as "Section 1, lots Nos. 1 to 24 inclusive, Stein's Additions to Galesville," taken in connection with plats showing the location of these lots, and which were exhibited at the time of the purchase, is sufficient under the Statute of Frauds.

Such plats were admissible in evidence for the purpose of proving the precise location of the lots Nos. 1 to 24 referred to in the contract.

APPEAL from the Superior Court of Baltimore City.

This action was brought by the appellee against the appellant, to recover the purchase money of a parcel of land agreed to be purchased by the defendant. Among other defences the defendant pleaded a fraudulent misrepresentation by the plaintiff in regard to the value of the land.

*First Exception.*—At the trial the plaintiff offered in evidence the following writings, A. and B., the signaturet to which were admitted to be genuine :

## " *A.*"

" I have purchased this day, June 22, 1869, from Saml. Stein, Esq., lots 1 to 24 inclusive—Stein's Addition to Galesville, as per agreement.

WM. G. SCARLETT."

## " *B.*"

" Recd., Balto., June 22, 1869, from Wm. G. Scarlett, one hundred dollars, on account of, and being part of eighteen hundred dollars, purchase money, of section 1, Lots No. 1 to 24 inclusive, Stein's Addition to Galesville—balance of purchase money to be paid within thirty days from date—said Stein giving said Scarlett proper title.

SAMUEL STEIN."

And also the following admission in writing :

" I hereby admit, that Wm. F. Frick, attorney of Samuel Stein, has this day tendered to me, as the attorney of Wm. G. Scarlett, the annexed deed from Samuel Stein to William G. Scarlett, of lots numbered from 1 to 24 inclusive, being part of Stein's Addition to Galesville, in Anne Arundel county, in the State of Maryland, and ha soffered to deliver to me, as the attorney of said Scarlett, the said deed, duly executed and acknowledged by the said Stein, on payment of the sum of seventeen hundred dollars, claimed by him to be a balance of purchase money due by

said Scarlett to said Stein, on account of the property described in said deed. And I have refused, on behalf of the said Scarlett, to accept said deed or to pay said claim. And I agree to docket a suit at any time in the Superior Court of Baltimore city, as attorney for said Scarlett, to test said Stein's right to recover said purchase money.

B. C. BARROLL,

"June 14, 1870." Atty."

The plaintiff then offered in evidence a plat of Stein's Addition to Galesville, alleging that he had exhibited said plat to the defendant at the time of the contract of sale of the lots, and that the lots, No. 1 to 24, as shown on said plat, were those referred to in the contract. The defendant objected to the said plat as evidence, and the oral testimony of the plaintiff, connecting said plat with the contract.

But the Court, (DOBBIN, J.,) overruled the same, and allowed the plat and the evidence of the witness to go to the jury, for the purpose of identifying the lots mentioned in the contract, and for the purpose of identifying their size and location. The defendant excepted.

*Second Exception.*—After the testimony contained in the first bill of exceptions had been submitted, at the opening of the Court, the following day, the plaintiff, as witness, produced a plat purporting to have been made by the surveyor Martinet, and offered said plat in evidence, alleging that he had made a mistake in regard to the former plat, and that said plat was not the plat taken by him to the defendant at the time of the contract (June 22nd,) but that the plat now offered was such plat, so exhibited by him to the defendant. The plat produced by the witness on the first day, was a lithographic plat, and that produced at this time was the original written plat of Martinet, surveyor, from which the lithographic copies had been made.

Witness explained that he was under the impression, the first day, that the lithographic copies had been made, and

one of them exhibited to the defendant when their contract was made. On reflection, however, he was satisfied he had made a mistake, and that the plat exhibited was the original plat of Martinet. The defendant objected to the admission of the plat in evidence for the purpose of defining and designating the lots mentioned in the contract; and also objected to the oral evidence of the plaintiff, that he, exhibited such plat to the defendant at the time of the sale, and that the lots sold were the same designated on said plat. But the Court admitted the plat and the evidence of the plaintiff to the jury. Whereupon, the defendant excepted.

*Third Exception.*—After the evidence submitted by the plaintiff as contained in the first and second bills of exception, the defendant testified as follows : That a week or two before the 22nd of June, 1869, the plaintiff came into the defendant's place of business and stated to defendant that he had made an operation in which he would like to have defendant interested, and proposed to put defendant in said operation on the ground floor with himself, due allowance being made for such expenses as plaintiff might have incurred, the operation related to the property at Galesville, mentioned in this case; that when plaintiff should be ready to act upon the question, he would let defendant know. He then and there gave assurances to defendant, · that the operation would be entirely satisfactory and beneficial to both parties. That his only object in taking defendant into the matter, was the good feeling he had for defendant, acquired by long acquaintance and friendship. He called on the 22nd of June, 1869, when he stated to defendant that he could then close the transaction, and mentioned what the operation was; that he had purchased a lot of ground at Galesville, Md., a fine location, susceptible of improvement; that Galesville was destined to be a considerable place; that defendant replied, that he had never been there, knew there was such a place, and that

was all; that of the worth or value of land there, he knew nothing whatever; that he had confidence in the judgment and friendship of plaintiff, and that if he assured him that his representations were true, and that plaintiff would put him on an equal footing with himself, making due allowance for expenses, defendant was satisfied to take a moderate share of the operation with him, to which plaintiff assented, and thereupon, he paid plaintiff $100, and signed the paper offered in evidence; that he remained without further information for some months, when somebody came into his office, of whom he made enquiries as to the value of property in Galesville, and the information obtained satisfied him that a fraud had been practiced upon him by the plaintiff; that he afterwards went to see the plaintiff at his house, and told him that he wished to withdraw; that the statements made to him by plaintiff, were entirely false; that his representations were not true; (this interview was in the month of April, 1870;) defendant then offered to the plaintiff to give up and lose the $100, which he had paid him, told the plaintiff he was willing to pay· that for the experience which he had had with him; the plaintiff declined to accede; witness then told him that he did not consider the property his, in any shape or form; that he considered himself wronged; there was some talk between us at that interview about my giving the plaintiff a ground-rent on German street; I asked the plaintiff what he would be willing to take that ground-rent at on account; this occurred in the first part of the interview, and witness explained that he did this to test the plaintiff; apparently, he·was willing to take the ground-rent; he said I could put it in at what I thought it was worth; witness then asked the plaintiff what he had paid for the property, and he said $100 per acre; it was at the rate of about $1,350 per acre that he sold to witness; plaintiff called on the defendant several times for payment between October and January, 1870, but defendant always put him off, having

got an inkling that all was not right. The witness being asked on cross-examination if he did not, for the first time, intimate to Mr. Stein, that he would have nothing more to do with the property, by a letter written some time after the interview of witness at the house of Stein, witness answered, that he did not recollect having written a letter.

Plaintiff then produced the following letter:

"BALTIMORE, April 19, 1870.

"Sam'l Stein, Esq.,

Dear Sir:—On consultation with my counsel and friends, I have *determined* not to have anything more to do with that "Galesville" property of yours, as the representations made by you were totally incorrect and deceptive, which can be fully demonstrated when necessary.

Very respectfully,

WM. G. SCARLETT."

Witness acknowledged the letter, but said he had forgotten it. He stated that he went to the house of Stein and had the interview spoken of, for the purpose of getting released; that he made no offer of the ground-rent; that it was only talked about; the object was to get released; it was a sub-ground-rent of $42 or $52, worth $800, or $900; that he then told Stein he would have nothing more to do with it; witness cannot say positively whether the letter was written before or after the interview, having forgotten the letter entirely; witness said the allegations contained in the letter were true; that he relied entirely on the representations of Stein.

The plaintiff then offered himself as a witness, and testified: That he attended the sale at Galesville, and became the purchaser of the property; that the sale and the amount he had paid were reported in the Baltimore papers; that a short time subsequently he met Mr. Scarlett, who remarked to him, "I see that you have made a pur-

chase of Galesville;'' witness replied, yes, that he intended
to lay it out in lots, and that he would show him the plat
when it was completed; Scarlett, himself, was the first to
speak of purchasing, and witness said he would show him
the plat as soon as he had laid off the property; when
witness got his plat from Mr. Martinet, he took it to Scar-
lett, as promised, and showed it to him; he examined the
plat, and then asked me what I would take for the 24 lots,
marked on the plat, sec. one; as near as I recollect, I told
him I had not made any estimate of what I would take for
the lots; that I considered them to be the most valuable of
any I had; he then, of his own accord, made me an offer
of $1800 for the whole, which was at the rate of $75 per
lot; and it was not until after some hesitation that I
agreed to take that price; he then paid me $100 on account,
and himself drew up the papers which have been offered in
evidence; in our agreement, I promised to give him a good
and sufficient title; in order to do so, though I had bought
the land on credit, I paid cash for them; I gave no notes,
but I could not at once get a deed; Mr. Hagner, the trus-
tee, went to Europe, and I was delayed; then Mr. Randall
was appointed trustee in his place, and I could get no deed
until that substitution was made; during all these inter-
views, Mr. Scarlett never once asked me what I had paid
for the property, nor did I ever state to him what it had
cost me; I never offered or agreed in any shape to let him
in, on what he calls the ground-floor, nor was any such
expression used; he purchased the property of his own
accord, as stated, without my making to him any repre-
sentations whatever, except that I considered the lots he
had selected, decidedly the most valuable part of the whole
property; I called on him afterwards for settlement, and
he never once made any objection, but put me off, on the
ground that he was short of money; he came to my house
in April, and offered to settle with me, provided I would
take the ground-rent in part payment; he named a partic-

ular ground-rent on German street; I told him that I would examine it and let him know; he parted with me, leaving me to infer that he intended settling in that way; I accordingly made enquiries about the value of the ground-rent; at the interview he never said one word about fraud or misrepresentation, nor one word about his not meaning to take the property; the first I heard from him to that effect, was in his letter, which has been put in evidence; witness stated, finally, that the amount of sale by him to Scarlett had no reference, in the remotest way, to the price he, witness, had given for the whole property.

The plaintiff then offered to prove by numerous witnesses from Galesville, and others, that the village of Galesville was in a fine location, and the land susceptible of great improvement and increasing in value; that the 24 lots purchased by the defendant were worth all and even more than he had agreed to pay for them; that since the suit had been pending, offers had been received to purchase one or more of the lots at $100 a piece; and that in one instance the offer had been made directly to Mr. Scarlett himself, and that he had referred the parties to Mr. Stein, saying that he was not the owner, and that no sale was effected by reason of the suit only.

The defendant objected to any evidence being offered as to the value of the lots bought; and the Court sustained the objection, on the ground that there was no evidence that the lots were not of the value at which they were bought, and therefore their value was not in issue.

The plaintiff then proved by witnesses, that the lots purchased by Scarlett were decidedly the most valuable of all that he had; that they were situated near the water and landing, and in the immediate neighborhood of stores which were carrying on a first rate business; some of them selling goods at the rate of $60,000 a year, and one of them selling carriages—the manufacture of which gave constant occupation to some fifteen or twenty hands in

Baltimore; and that they had a special value by reason of their location.

Upon the evidence, the defendant prayed the Court to instruct the jury as follows:

1. That the alleged contract of purchase of the land in question by the defendant was a purchase and sale to be consummated by both parties within thirty days from the date thereof, to wit: 22d June, 1869.

2. That the contract offered in evidence is not evidence *per se* of an indebtedness by the defendant to the plaintiff, but that said contract was executory in its character. And unless the plaintiff was in a condition to make proper title to the defendant within the time mentioned, then no indebtedness for the purchase money accrued against the defendant by the terms of the contract.

3. And if the jury find the contract as alleged, and further find that the plaintiff had no conveyance to himself of the land in question at the time of making such contract, and that he did not obtain the conveyance from A. Randall, trustee, until January, 1870, and that such delay was necessary by reason of the absence of Mr. Hagner, the trustee, in Europe, then the said plaintiff was not in condition to make the defendant a proper title to the land in question, and the defendant was discharged from any obligation to pay the purchase money under said contract.

4. That the lapse of time between the date of the contract (June 22, 1869,) and the tender of conveyance by the plaintiff to the defendant, to wit, June 1870, was sufficient in law to justify the defendant in the refusal to accept such conveyance and to pay the purchase money claimed.

5. That there is no sufficient evidence in this cause that the plaintiff was the owner of the property in question at the date of the contract offered in evidence, as alleged in his declaration, and therefore he cannot recover the claim in this case.

6. That the plaintiff cannot recover in this suit, because there is a material variance between the terms of the contract offered in evidence, and the terms of such contract as set forth in the declaration.

7. That the deed from Randall, trustee, to the plaintiff, is not sufficient evidence of title in the plaintiff to satisfy his averment of ownership of the land in question, as averred in his declaration.

8. That there is no sufficient evidence offered in this case of a contract in writing, signed by the defendant for the lands in question to satisfy the Statute of Frauds, and therefore the plaintiff cannot recover.

9. That the contract offered in evidence of the 22nd June, 1869, cannot be enforced in this suit and a recovery had thereunder, because of the insufficiency of the description of the lands intended to be embraced therein. And that the plat offered in evidence by the plaintiff does not form part of such contract, and cannot be used in aid of such insufficient description.

10. That to entitle the plaintiff to recover in this cause, it is necessary that he should aver in his declaration, and prove at the trial, that he was at all times ready and willing to perform his contract, and that he tendered such performance to the defendant prior to the beginning of this suit; and not having so done, he cannot recover in this case.

11. That if the jury find that the defendant had never been to Galesville, and knew nothing of the value of property there ; and that he was upon terms of friendship and intimacy in business relations with the plaintiff; and that the plaintiff availed himself of such relationship to induce the defendant to make the purchase of lands in question at the prices named for the same; and falsely and fraudulently to induce such purchase, overstated and falsely stated, the character of said property, and represented the same to be a good investment, and agreed to take the

defendant into said purchase upon the same terms of purchase made by the plaintiff, due allowance being made plaintiff for his expenses, and the jury shall find that plaintiff sold the property to defendant at a rate of value exceeding greatly what plaintiff was to pay for the same, and shall believe that the defendant, in fact, was defrauded and injured by such false representations, then the plaintiff cannot recover in this suit.

12. That if the jury shall find from the evidence, the making of the contract by the defendant, and shall further find, that prior to the making of such contract, the plaintiff called upon the defendant, and stated to the defendant his purchase at Galesville, and proposed to the defendant to sell him an interest in said land at Galesville upon terms of equality, due allowance to be made for expenses; and stated to the defendant that when he was ready to act, he would let the defendant know, and that he gave the defendant assurance that the transaction would be mutually beneficial, and that his only object in taking the defendant into the transaction, was the good feeling which he had for him; and that in pursuance of such arrangement the plaintiff, on the 22 June, 1869, called upon the defendant, and stated that he was then able to close it, and that the location at Galesville was fine; and that Galesville was destined to be a considerable place, and that it was a good investment for the defendant to make; and that the plaintiff was then and there told, by the defendant, that he had never been to Galesville; that he knew there was such a place, and that was all, and that of the worth or value of the property there he knew nothing, (and that the same was true;) that he had confidence in the judgment of the plaintiff, and that if the plaintiff assured him, on his own honor as a gentleman, that his representations were true, and that he would put the defendant in on the ground floor with himself, meaning thereby an equal footing with himself, making due allowance for expenses, the

defendant would take a moderate share of the operation with the plaintiff, and upon receiving such assurances, the defendant consented to go into the operation, and then and there, in reliance upon the statements of the plaintiff, defendant paid him $100 in cash, and signed the contract offered in evidence ; and if the jury find from the evidence, that the statements of plaintiff were not true ; that the contract signed did not put the defendant into the Galesville purchase upon terms of equality with the plaintiff, expenses allowed, and shall find that the plaintiff, in inducing the defendant to enter into such contract, perpetrated a fraud upon defendant, then the plaintiff cannot recover in this case.

13. That in order to entitle the plaintiff to recover upon the contract offered in evidence of the sale of the lots by the plaintiff to defendant, it is not sufficient that the jury shall find the making of such contract by the signing of the defendant, and the acceptance by him of its terms, but the jury must further find that such contract was made *bona fide* between the parties ; and if the jury shall believe, from the evidence, that the plaintiff induced the defendant to enter into such contract by any wilful deception on his part as to the subject-matter of the contract, to wit: the lots in question and the value thereof, then the plaintiff cannot recover ; if the jury find that the defendant was deceived and misled by the deception and deceptive statements of the plaintiff, and that the defendant's letter of the 19 April, 1870, offered in evidence by the plaintiff, may be considered by the jury as evidence of such deception in connection with all the other facts and circumstances of the case.

The Court refused all of these prayers, and gave the following instructions :

"If the jury shall find, from the evidence, that the agreement to purchase by the defendant, and the receipt for $100 by the plaintiff, were signed by them respectively,

and shall find the facts recited in the deed from Randall, trustee, to the plaintiff, and the due execution and delivery of said deed, and the undisputed possession of the plaintiff under it at the date of his tender of title to the defendant and ever since, then the plaintiff is entitled to recover in this action the balance of the purchase money, with such interest as the jury may allow; the tender and refusal of the title being admitted by the agreement of counsel filed in the cause, and there being no evidence sufficient in law to entitle the jury to find fraud in the transaction." The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER, ALVEY and ROBINSON, J.

*Benj. C. Barroll,* for the appellant.

*William F. Frick,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This suit was brought to recover a balance of purchase money alleged to be due on the following contract:

"I have purchased this day, June 22nd, 1869, from Sam'l Stein, Esq., lots 1 to 24 inclusive—Stein's Addition to Galesville—as per agreement.

WM. G. SCARLETT."

"Received, Balto., June 22nd, 1869, from Wm. G. Scarlett, one hundred dollars, on account of, and being part of eighteen hundred dollars purchase money of section 1 to 24 inclusive—Stein's Addition to Galesville—balance of purchase money to be paid within thirty days from date—said Stein giving said Scarlett proper title.

SAMUEL STEIN."

Scarlett *vs.* Stein.

The tract of land of which lots No. 1 to 24 formed part, was purchased on the 3rd June, 1869, by Stein, the appellee, of Alexander B. Hagner, Esq., trustee to sell the same under a decree of the Circuit Court of Baltimore city. In consequence of the absence of Mr. Hagner, in Europe, Mr. Randall was appointed trustee to complete the trust, and on the 31st of January, 1870, he conveyed the property to Stein, and on June 14th, 1870, Stein tendered to the appellant a deed of lots No. 1 to 24, which the latter declined to accept.

There was no tender of the purchase money by the appellant within the thirty days prescribed by the contract for its payment, nor was there any demand made upon the appellee for a deed, or any objection when tendered, that it was not within the time mentioned in the contract.

The main questions presented by this appeal are: 1st. Whether the failure on the part of the appellee to tender to the appellant a deed of title within thirty days, discharged the appellant from all liability under the contract?

2nd. Whether the appellant was induced to purchase the property by the *fraudulent misrepresentations of the appellee?*

Parties may, no doubt, make *time* an *essential part of a contract,* and in such cases, the failure by one of the parties to perform his part of the obligation within the time prescribed, discharges the other from all liability under the contract. Whether time is to be considered *as of the essence of the contract,* must, of course, depend upon the intention of the parties. When this intention is expressed in clear and unambiguous terms, the contract must speak for itself, and the liability of the parties must be determined by the plain and obvious meaning of the language used. If, however, this intention is not expressed in clear and direct terms, Courts may look to the acts and conduct of the parties, in order to find out the meaning which they them-

selves have put upon the contract. There is no clause in the agreement before us providing that it shall be null and void upon the failure of either the appellant to pay the purchase money, or the appellee to convey the legal title, within thirty days—the provision in this respect being: "balance of purchase money to be paid within thirty days from date, said Stein giving said Scarlett proper title." If there be any difficulty as to the interpretation of this agreement, looking to the face of the paper itself, it is very clear, we think, when viewed in the light of the circumstances surrounding its execution, and of the acts and conduct of the parties thereto, subsequent to its execution, that time was not intended to be a *material part of the contract.* As we have before said, there was no offer by the appellant of the purchase money, nor any demand for a conveyance of the legal title, nor is there any allegation that he was injured by not getting the title within the time prescribed by the agreement. On the contrary, the whole proof shows that he denied all liability under it, upon the *sole ground* that he had been induced to make the purchase by the *fraudulent representations of the appellee.*

This brings us to the question as to whether there was any evidence, *legally sufficient,* which the Court ought to have submitted to the jury, tending to prove that the appellant had been induced to sign the agreement in question by fraudulent representations of the appellee. Whatever conflict there may be in the reported cases, as to what is necessary to constitute fraudulent representations on the part of the vendor, they all agree that if a party makes a representation of material facts knowing them to be false, with a view of inducing another to make a purchase, who, relying upon the representation thus made, is induced to make a purchase which he otherwise would not have made, and is thereby injured, such person may rescind the contract of sale, and be discharged from all liability thereunder.

In this case the appellant testified that a short time before the execution of the agreement, the appellee came to appellant's place of business and stated that he had made an operation, in which he would like to have the appellant interested, and proposed to put the appellant in said operation on the *ground floor with himself,* due allowance being made for expenses incurred; that the operation would be entirely satisfactory and beneficial to both parties, his only purpose being to serve the appellant, on account of their long and intimate friendship. That on the 22nd June, the day on which the agreement was signed, he called again, and stated that the operation referred to the purchase of a lot of ground at Galesville, Maryland, a place destined to be of considerable importance. To the propositions thus made, the appellant replied that he had never been at Galesville, *knew nothing of the value of the property,* but that he had *confidence in the judgment* and *friendship* of the appellee; that *relying* upon the representations of the appellee, and the promise to put him on an *equal footing* in the operation, due allowance being made for expenses incurred, he signed the agreement in question. That shortly afterwards he found that the *representations, upon the faith of which* he had agreed to purchase the property, were false, and so informed the appellee. It further appears that the appellant, by his contract, had agreed to pay about thirteen hundred and fifty dollars per acre for part of the tract of land which the appellee had purchased but a few weeks before, of Mr. Hagner, trustee, at one hundred dollars.

Here was evidence which in our opinion ought to have been submitted to the jury, tending to prove that the appellant had been induced to make the purchase by the *fraudulent representations* of the appellee. It is true that the testimony of the appellant in regard to the transaction was *flatly* contradicted by that of the appellee, but the weight of the evidence and the credibility of the witnesses, were questions exclusively for the determination of the jury. We think the Court therefore erred in instructing the

jury, there was *no evidence* from which the jury could find *fraud* in the transaction.

We do not deem it necessary to examine in detail the thirteen prayers offered by the appellant. The contract of purchase was signed 22nd June, 1869, and a deed of conveyance, was tendered by the appellant June 10th, 1870. There was no demand by the appellant for a conveyance of the title prior to the day on which the deed was tendered, nor was there any offer to pay the purchase money, nor any proof that the appellant was injured by the delay. Under these circumstances, if it should be conceded that it was the duty of the appellee to tender a conveyance of the title, *prior to a tender* on the part of the appellant of the *purchase money*, a question we are not to be understood as deciding, we think the deed was tendered within a reasonable time.

We are also of opinion, that the description of the property in the contract as "section 1, lots No. 1 to 24 inclusive, Stein's Addition to Galesville," taken in connection with the *plats*, showing the *location* of these lots, and which were exhibited at the time of the purchase, is sufficient under the Statute of Frauds. "*Id certum est, quod certum reddi potest.*" These plats were clearly admissible in evidence, for the purpose of identifying and proving the precise location of the lots No. 1 to 24, referred to in the contract.

We find no error in the first and second bills of exception, nor in the refusal to grant the appellant's 1st, 2nd, 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th and 13th prayers. There was error however, in the refusal to grant the 11th and 12th prayers, and in the instruction granted by the Court.

For these reasons the judgment will be reversed and a new trial awarded.

*Judgment reversed, and
new trial awarded.*