HARRIET E. DIAMOND *vs.* J. ALEXIS SHRIVER
ET AL.

*Time Not of the Essence of Contract for the Sale of Land—
Right to Rescind—Construction of Contract
by Act of the Parties.*

In a contract for the sale of land time is not generally of
the essence, so as to authorize the vendor to rescind the
contract for a failure of the purchaser to make payment at
the time fixed.

When a contract for the sale of land provides that the bal-
ance of the purchase money shall be paid either within
ninety days from date, or upon delivery of a deed conveying
the land, free of encumbrances, the vendor is not authorized
to rescind the contract, about a month after the expiration
of the ninety days, for non-payment of the balance of the
purchase money, especially where the vendor was not pre-
viously able to make a conveyance free from encumbrances,
and when, after an attempted rescission, the purchaser had
tendered the full amount of the purchase money.

An allegation that the execution of a contract had been ob-
tained by means of false representations made by the pur-
chaser, held not to be supported by the evidence.

When the language of a contract is uncertain the acts and
conduct of the parties may be considered to discover the
meaning of the language used, but the parties cannot testify
as to their understanding or interpretation of the contract.

*Decided January 12th, 1911.*

Appeal from the Circuit Court for Harford County (DUN-
CAN, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Harry S. Carver,* for the appellant, submitted the cause on his brief.

*Philip H. Close* (with whom was *Stevenson A. Williams* on the brief) for the appellees.

BURKE, J., delivered the opinion of the Court.

The appellant filed a bill of complaint in the Circuit Court for Harford County against the appellees for an injunction to prohibit them, their agents and servants from entering upon and taking possession of the land mentioned in the bill, and from hauling poles upon the land, and from digging up the soil and erecting poles thereon. The bill alleged her ownership of the property, and she filed therewith a certified copy of the deed under which she acquired title to the land.

The second paragraph of the bill set out the facts upon which she relied as entitling her to an injunction. It alleged "that the defendant, and certain persons, agents and employees professing to act for and on behalf of said defendants, have entered upon and are now proceeding to haul and place upon said property large poles, and are digging or proceeding to dig large holes in the ground on said premises for the purpose of erecting large poles therein, in a forcible manner, and intending to string wires on said poles, all against the earnest request and repeated protest of your oratrix, and without any legal authority or license therefor, and without first having ascertained, either by agreement with your oratrix or anyone in her behalf, or by the award of a jury, the amount of money which would be a just compensation for the use and occupation of your oratrix's said land, and without having first paid or tendered to your

oratrix any just compensation therefor, and unless restrained by this honorable Court your oratrix apprehends that the said defendants, their servants, agents and employees will continue to commit trespass complained of and will erect said poles on the said property of your oratrix and string wires thereon, which will, in the future, interfere with the shade and ornamental trees of your oratrix and otherwise interfere with your oratrix in the enjoyment of said property."

The Court granted the preliminary injunction upon the bill as prayed. The respondents answered the bill, testimony was taken in open Court, and after hearing upon bill, answer, and testimony the Court passed a decree dissolving the injunction and dismissing the bill with costs to the defendants, and from that decree this appeal was taken.

The evidence shows that the Belair Electric Company has been for a number of years operating an electric plant in Harford County, and supplying electricty to its customers in Belair and adjacent territory. In the summer of 1909 it was engaged in installing another plant to be located about two and a half miles below its original plant, and it was proposed to connect the two plants by a pole line. The appellant was the owner of a small property, mentioned in the bill, located between the two plants of the defendant company, and on the route of the proposed pole line connecting them. J. Alexis Shriver, the other defendant, is the secretary and treasurer and general manager of the Belair Electric Company. It became necessary in the work of extending its business and enlarging its power for the Electric Company to erect poles and string wires thereon across the complainant's property. It determined to buy her land and with that purpose in view authorized James R. Magness to secure an option to purchase it. On July 2nd, 1909, the plaintiff and her husband executed under seal an option by which they covenanted "to grant, convey and assure to James R. Magness or his assigns in fee simple free of all incum-

brances" the land mentioned in the bill. It was provided that "this option must be exercised within thirty days by the payment of one-half of the purchase money, the balance to become due and payable within ninety days from this exercise of this option and upon the execution and delivery by the undersigned of a deed giving clear title to the same." On the next day, Magness assigned all his interest under the option to J. Alexis Shriver in consideration of ten dollars. On the 2nd of August, 1909, this option was exercised and converted into a contract of sale by the following endorsement thereon under seal signed by the complainant and her husband: "In consideration of the payment of the sum of fifty dollars ($50.00) the receipt of which is hereby acknowledged, the within and aforegoing option is hereby exercised and converted into a sale of all the property therein described, and the balance of the purchase money thereon, to. wit, the sum of four hundred and fifty dollars ($450.00) shall be paid either within ninety days from this date, or upon delivery of a deed conveying said property in fee simple clear of all incumbrances."

At the time the above paper was signed, Mr. Shriver delivered to Mr. Diamond his check for fifty dollars drawn on the Harford National Bank to the order of the complainant and her husband, which was endorsed by the payees and paid by the bank. In the fall of 1909, the Electric Company removed the trees on the route of the pole line across the plaintiff's property preparatory to erecting the poles, and the complainant and her husband made preparations to remove from the property. They had rented a house, and removed some of their property to the rented premises. On the 14th of December, 1909, Mr. Shriver called at the house of the complainant, and William Diamond, her husband, asked for the contract of sale, or option, as it is called in the evidence. At the request of Mr. Shriver, William Diamond came to Belair that day, and met Mr. Shriver in the Court House. Shriver's account of what took place at that interview and the

purpose of the meeting (and his testimony is not really disputed) is as follows: "We came up to Belair, and when we got up here we found Mr. Robinson was in Court, and that he would not be out until recess. I talked with Mr. Diamond in the hall downstairs, and he said "let me look at that option" and I took it out of my pocket, and he said "I will take good care of it." He said "let me look at it," and he put it in his pocket and walked outside where he met Mr. Charlie Archer who had him in tow, and took him into Mr. Harry Carver's office. I then went over and made demand on him and on Mr. Carver for the paper which belonged to me, and they both refused to give it up, and I left the matter then, having made demand on them after that endeavor to settle it; I hadn't any idea he was going to Mr. Carver's at that time , because we had talked of going to Mr. Robinson's. On the same day Mr. Carver sent Mr. Shriver a copy of the contract to which was attached the following signed by the complainant and her husband: "The ninety days stipulated in the annexed option and agreement having expired within which the balance of purchase money was to be paid, all rights of said James R. Magness and his assignee or assignees thereunder have ceased and determined." Mr. Shriver at once returned the copy, stating that he did not recognize in any way the right of the Diamonds to determinate the agreement. There was a mortgage of one hundred and sixty-six dollars on the property held by a Miss McIlvain, who was represented by Mr. Thomas H. Robinson. It was necessary that this mortgage be released, and Mr. Shriver had seen Mr. Robinson about the matter, but so far as the record shows this mortgage has never been released.

On the 20th of April, 1910, Mr. Shriver tendered the complainant in gold coin the full amount of the purchase money and interest, and at the same time presented to her and her husband for execution a deed for the property to himself. This they refused to execute. He then began the erection of the poles, and was stopped by the injunction.

The complainant claims that she had a right to rescind the contract, and having rescinded it by the notice of December 14th, 1909, all rights which may have been acquired under the agreement were thereby terminated, and her complete ownership in the property was then restored. She bases her right of rescission, first, upon alleged misrepresentations made by James R. Magness in securing the option of July 2nd, 1909; and secondly, that time was of the essence of the contract of August 2nd, 1909, and inasmuch as the purchase price was not paid within ninety days of that date all rights under the contract were lost.

As to the first contention we find nothing in the record to support it. We fail to find any false or material misrepresentation inducing either the option or contract of sale. The complainant testified that Mr. Magness stated that he wanted to buy the property to build a blacksmith shop upon it, and that she did not know Mr. Shriver in the transaction. It appears that Magness wanted certain portions of the property and had made some arrangements with Shriver by which he expected to get such parts thereof as were not needed by the electric company. But there is nothing to show (indeed, it is not claimed) that the complainant would have refused to sign the option had she been aware of the arrangement between Shriver and Magness. When the contract of August 2nd, 1909, was signed, William Diamond, the husband, knew of Shriver's interest in the purchase.

As to the second contention. It is the duty of the Court to construe the contract. The intention of the parties gathered from the language used, read in the light of the circumstances existing at the time, must prevail. When thus examined there is nothing in the contract to take it out of the general rule that time is not of the essence of the contract. A clear statement of this rule may be found in *Scarlett* v. *Stein*, 40 Md. 525: "Parties may no doubt make time an essential part of a contract, and in such cases the failure by one of the parties to perform his part of the obligation within the time

prescribed discharges the other from all liability under the contract. Whether time is to be considered *as of the essence of the contract* must, of course, depend upon the intention of the parties. When this intention is expressed in clear and unambiguous terms the contract must speak for itself, and the liability of the parties must be determined by the plain and obvious meaning of the language used. If, however, this intention is not expressed in clear and direct terms Courts may look to the acts and conduct of the parties in order to find out the meaning which they themselves have put upon the contract." To the same effect are the cases of *Derritt* v. *Bowman,* 61 Md. 526; *Wilson* v. *Herbert,* 76 Md. 498; *Gilman* v. *Smith,* 71 Md. 174; *Coleman* v. *Applegarth,* 68 Md. 21.

A stipulation that the purchase price shall be paid at or before a certain day or within a certain period does not make time the essence of the contract with respect to payment. *Pom. Spec. Perf. of Con.,* 2d ed., 392, and cases there cited. But aside from this, the complainant was under an obligation to convey the property to Shriver "in fee simple clear of all incumbrances." This she never offered to do, nor does she appear to have been in a position to do. Shriver was ready to pay within the time stipulated if he could have gotten a clear title, and the inability of the plaintiff to execute a deed of the character she obligated herself under the contract to deliver is a sufficient reason for the failure of Shriver to pay the purchase price. It was the evident intention of the parties that he should have such a deed either before or at the time the money was paid. There were some exceptions to the testimony, but these need not be considered at any length. The testimony excepted to by the plaintiff related to the attempt made by the parties to get a clear title. This testimony was properly admissible as a reason or excuse for the delay in perfecting the sale. Had the evidence excluded by the Court remained in the case, it would not have changed our conclusion.

Where the language of the contract is uncertain and obscure *the acts and conduct* of the parties may be looked to to discover the meaning of the language used; but the parties cannot testify as to the understanding or interpretation of the contract. Our conclusion is that it was not within the power of the complainant under the facts and circumstances disclosed by the record to rescind the contract of August the 2nd, 1909, and, therefore, the decree of the lower Court will be affirmed.

*Decree affirmed with costs.*