RICHARD BARNES, AND ROBERT FERGUSSON, EXC'RS OF JOHN BARNES, *vs.* PETER W. CRAIN, AND HENRY G. S. KEY, ADM'RS OF MARY C. B. COMPTON, AND NEXT FRIEND OF BARNES COMPTON.—*December,* 1849.

The jurisdiction of courts of equity to superintend the administration of assets, and decree distribution among legatees, is now fully established.

Every guardian, however appointed, is under the superintendance and control

of a court of chancery, and may be there held responsible for his conduct, upon application of the infant by *prochein ami.*

A bill in equity may be filed during infancy, and the court will hear any one on behalf of the infant.

A bill filed by the representatives of a ward, against the executors of a guardian, in whose hands the estate of the infant remained unaccounted for at his death, is clearly within the jurisdiction of chancery.

The intervention of a remedy at common law, against the representatives of the guardian, cannot be made to control the original relief which chancery had the power to afford.

Where the authority and jurisdiction of the court of chancery is original and established, it is not ousted by a statutory provision, giving to courts of law power over the same subject.

Chancery will entertain a bill which, on its face, discloses a complete remedy at law, where sufficient ground is shown for going into equity.

As evidence of payment of a legacy due to a ward, the defendants relied on a memorandum in the handwriting of *C,* the husband of the ward, by which he charged himself with "amount of *B's* draft, 500," (*B* being the guardian.) The draft was not produced, and there was no proof of its payment, or on what account it was drawn. They further claimed a credit of $15,000, being the amount of a check by *B,* on a bank in *Baltimore,* payable to *C, or bearer,* which was paid by the bank, but to whom the money was paid, did not appear. HELD : that this evidence of payment was too indefinite and vague to entitle the guardian to a discharge in equity.

When payments of this character, looking to the discharge of a guardian's account, are made, it is essential that the party, at his peril, should obtain and preserve the necessary and legal evidence to that effect.

Appeal from the *Court of Chancery.*

The bill in this case was filed in 1845, by the appellees, to recover of the appellants a pecuniary legacy bequeathed, in 1818, by *Samuel Bond* to *Mary C. B. Compton,* and which came to the hands of *John Barnes,* the executor of *Samuel Bond,* and the testator of the appellants.

The answer admits, the bequest by *Samuel Bond* to his grandniece, *Mary C. B. Barnes;* the reception of the legacy by *John Barnes,* the executor of *S. Bond,* and the guardian of *Mary C. B. Barnes;* the marriage of *M. C. B. Barnes* to *Mr. Compton,* in 1824; her death in 1834, and that of her husband, in 1837, leaving the complainant, *Barnes Compton,* their only child and heir at law. The answer also admits the

administration of the complainants *Key* and *Crain*, upon the estate of *Mrs. Compton*, and the sufficiency of the personal estate of *John Barnes*, in their hands, as executors to pay the legacy. The defence set up is, that the legacy had been paid. The defendants also excepted to the averments of the bill, and the jurisdiction of the court.

The facts of the cause are so fully stated in the opinion, as to render a further statement of them, or of the testimony, unnecessary.

The chancellor (JOHNSON,) decided, that the complainants were entitled to relief, and passed an order referring the cause to the auditor, to state the necessary accounts. From this order the defendants appealed. The opinion of the chancellor, accompanying this order, is reported in 1*st Md. Ch. Decisions*, 151.

The cause was argued before DORSEY, C. J., CHAMBERS, MAGRUDER, MARTIN, and FRICK, J.

RANDALL and CAUSIN, for the appellants, on the questions of lapse of time and jurisdiction:

The court see, that this is a bill for the recovery of a legacy twenty-seven years after the testator bequeathed it, and died—twenty years after the right of action accrued to the legatee, by her intermarriage, or more, as it may be her right of action accrued before her marriage—during ten years of which twenty, she was living with her husband, and during three years longer the husband lived, surviving his wife. The bill alleges no absence from the State, no disability to sue, no ignorance of rights, nothing to arrest this right of action, or prevent recovery.

As to the jurisdiction of the court, which is excepted to, there can be no doubt of the right of action for the recovery of this legacy on the executor's bond, nor on the guardians bond—which could have been brought by the legatee and her husband, or by her surviving husband, for twelve years after their intermarriage, at least—for seven years after the passage of this account, wherein *John Barnes* had claimed credit for these lega-

cies. No account was required, no difficulty whatever requiring the aid of a court of chancery, no special circumstance, whatever, shown why the parties should go into equity. We say, therefore, there is no jurisdiction in this case in a court of equity; a court of law would have fully administered relief, else all estates may be brought here. 2 *G. & J.*, 14, *Gibbs vs. Clagett*. 12 *G. & J.*, 477, *Richardson vs. Stillinger*.

Our testamentary system, and acts of Assembly, giving the right to sue and recover legacies at law, causes much of the *English* law on the subject, to be inapplicable to us. *Kane vs. Bloodgood*, 7 *John. Ch. Rep.*, 90.

If a suit had been brought at law, on either the executor's bond, or the guardian's bond, no doubt can be entertained that, by our statute, it would have been barred by the statute of limitations. 3 *G. & J.*, 389, *Green vs. Johnson*.

Whether the suit had been for the legacy or not, and whatever proceedings had been instituted at law, for the recovery of this legacy, it would have been barred by the statute of limitations. As there are forms of action at law, by which this action for the legacy may be maintained, equity will follow the law in applying the same rule when the suit is brought here, although there be no such special limitation provided by law, within which the legacy must be sued for. 7 *John. Ch. Rep.*, 90, above.

Now this very fact, that there is no such special provision to bar a legacy, shows, that courts will adopt some such rule as will prevent the laches, lapse of time, &c., as may require the proper prosecution of suits to recover legacies. This is the general policy of the law. The testamentary system, in all *its* provisions, looks to a speedy and certain settlement up of estates. Here, from 1819, to 1837, the right to recover, existed in persons capable of suing and requiring payment. Now, although there is no special limitation of time, within which a legacy must be sued for, yet, in *Angel on Limitations, page* 169, we read: "Long forbearance to make demand for unpaid legacies, affords the presumption, either that the claimant was conscious the legacy has been satisfied, or that he intended to

relinquish it;" and he cites, among the authorities, *English* and *American* works. See also *Jones vs. Turburville*, 2 *Vesey*, *Jr.*, 11. 2 *Story Eq. Com.*, *sec.* 1520. 1 *Minor*, 256, 362, *Huckstep vs. Matthews and Court.* 2 *Watts' Rep.*, 161.

That courts of equity will always presume against these stale demands, under all circumstances. 10 *Wheat. Rep.*, 152, *Elmundorff vs. Taylor.* 1 *Howard*, 161, *McNight vs. Taylor.* 5 *G. & J.*, 121, *Steiger's Adm'r, vs. Hillen*, (this is a case of a widow, always the most favored of claimants.) 3 *Bland*, 110, *Hepburn's case.*

There needs be no such defence as laches, lapse of time, &c., specially set up in the answer, the plea or defence of payment is supported by these facts, showing the legal and equitable presumption of payment. *Higgins vs. Crawford*, 2 *Vesey*, *Jr.*, 11, and the above authorities.

The argument on the facts of the case is omitted.

ALEXANDER and PRATT, for the appellees, insisted:

1st. That the record does not show the payment of the whole, or any part of the legacy claimed in the bill.

2nd. That the prayer for relief, contained in the bill, was sufficient to warrant the decree which has been passed in the case.

3rd. That the case presented by the bill, if sustained by the proof, would clearly entitle the complainant to relief *in equity*.

FRICK, J., delivered the opinion of this court.

*Samuel Bond*, by his last will and testament, bequeathed to his grandniece, *Mary C. B. Barnes*, a pecuniary legacy of $3,000, and also one-fourth of his slaves. Two of the co-executors of the will having died, *John Barnes*, the surviving executor, (and the father and guardian of the legatee,) passed his first and final administration account with the orphans court, by which, as guardian, he came to the possession of the said $3,000, and the further sum of $2,337.50, the estimated value of the slaves so bequeathed to his daughter.

*Mary C. B. Barnes* intermarried with *William P. Compton*, and both *Compton* and wife afterwards died, leaving *Barnes Compton* (one of the complainants,) their only child and heir at law, and *John Barnes*, the grandfather, was duly appointed his guardian.

The said *John Barnes*, the guardian, some few years after, also died, leaving the defendants, *Richard Barnes* and *Robert Fergusson*, his executors, who, in that character, came to the possession of his estate.

*Peter W. Crain* and *Henry G. S. Key*, the complainants, then sued out letters of administration upon the estate of *Mary C. B. Compton*, and, in that right, uniting with them *Barnes Compton*, (for whom they sue as his next friends,) they file the present bill of complaint.

The bill admits, that *Barnes*, the guardian, accounted to *Compton* and wife for her proportion of the estimated value of the slaves, but charges that he never paid to them, in whole or in part, the legacy of $3,000, which is now sought to be recovered by these complainants.

The bill further charges, that as the next friends of *Barnes Compton*, the complainants, *Crain* and *Key*, applied to the defendants to pay the aforesaid legacy, but that they refused to do so, because of their doubt whether the same could be accounted for and paid over to any other than an administrator of the said *Mary C. B. Compton*; and that they, thereupon, sued out letters of administration on her estate, to secure the defendants, and afford them the necessary indemnity against future responsibility for any sum which they may be decreed to pay, either to *Barnes Compton*, the minor, or to them, as administrators of the mother, *Mary C. B. Compton*.

The bill charges, also, that in a certain book of account, or memorandum, in the possession of said executors of *Barnes*, the entries importing the indebtedness of their testator, will be found, intended by him as the evidence and acknowledgment of his continued liability for said legacy, in the event of his death, and concludes with a prayer for such relief as equity may require.

The answer admitting the bequest by *Samuel Bond*, the grandfather, the marriage and successive deaths stated in the bill, the birth and minority of *Barnes Compton*, and the sufficiency of the estate of the testator, referring to the book of accounts invoked in the bill, (which is produced as a part of the evidence,) and to other testimony to be produced by them, avers that the legacy has been paid, if not the whole, at least in part, to *Compton*, the husband of the legatee, in his lifetime, and insists, that no such relief ought to be granted, as is prayed by the bill.

Before we enquire whether this defence is sustained by the testimony submitted, we proceed first to dispose of the objections which have been taken to the form and character of the proceeding.

It has been contended, that there is no jurisdiction in this case in a court of equity, and that full relief might be administered at law.

It is ordinarily true, as a general proposition, that where there is effectual and complete remedy at law, and no ground is shown for going into equity, a court of chancery will not entertain a bill. 1 *H. & G.*, 221, *Drury vs. Conner*. But one of the most important functions of a court of chancery, is the care of the rights and the property of infants, and the jurisdiction of these courts to superintend the administration of assets, and decree distribution among legatees and distributees, is now fully established. 1 *Story's Eq.*, sec. 502. Every guardian, however appointed, is under the superintendance and control of the court of chancery, and may be there held responsible for his conduct, upon application of the infant by *prochein ami*. 1 *John. Ch. Cas.*, 99, and 2 *P. Wms.*, 107, *Eyre vs. The Countess of Shaftsbury*. And a bill in equity may be filed during the infancy, and the court will hear any one on behalf of the infant. *Macpherson on Infants*, 115, 348.

In this character, these parties, *Crain* and *Key*, as the next friends of the ward, first applied to the appellants to account for said legacy; and the payment being declined, on the ground that, in that character, they could not indemnify the executors

of *Barnes*, they sued out these letters of administration, as a sufficient security to the appellants, in accounting for and paying to them, in that character, the legacy due by their testator, and which, when recovered, *Barnes Compton*, the ward, will be entitled to receive from their hands.

It is thus a bill filed by the representatives of the ward, against the executors of a guardian, in whose hands the estate of the infant remained unaccounted for at his death. It claims the liquidation of an account over which the court of chancery, in the lifetime of *Barnes*, had original jurisdiction, and full power to afford redress. The intervention of a remedy at common law, against the representatives of *Barnes*, since his decease, cannot be made to control the original relief which chancery had the power to afford; and the case is still essentially that of a ward seeking relief in chancery, against the perversion of a trust in the hands of the guardian, for which his estate is responsible.

The argument of the appellants' counsel is, that as the right of action at law, for the recovery of this legacy on the executor's bond, is complete and undoubted, and as our acts of Assembly give this right to sue and recover legacies at law, the resort to chancery is excluded. But where the authority and jurisdiction of the court of chancery is original and established, it does not result that such jurisdiction is ousted by a statutory provision that gives to courts of law power over the same subject. And the case of *Drury vs. Conner*, 1 *H. & G.*, 220, before referred to, shows distinctly, that chancery will entertain a bill which, on its face, discloses a complete remedy at law, where sufficient ground is shown for going into equity. And such grounds, we apprehend, are sufficiently shown by the facts in the case, which we propose to examine.

The material fact, that the legacy was bequeathed by *Samuel Bond* to his grandniece, the mother of *Barnes Compton*, is admitted by the answer, which further avers, that it was paid, if not in whole, at least in part, to *Wm. P. Compton*, the husband of the legatee, in his lifetime.

To sustain the defence thus set up, the appellants file the book of accounts invoked by the complainants, which is endorsed, "Book of accounts of *John Barnes,* surviving executor of *Samuel Bond*." It must be premised, here, that in the administration account of *Barnes,* as surviving executor, in the distribution of the estate accounted for, he charges himself with $3,000, the amount of specific legacy in his hands, as guardian of *Mary C. B. Barnes,* as also to one-fourth of the negroes of the deceased, bequeathed to her, in value $2,337.50.

That account, without date, is then transferred to this book, which purports to show the settlement of the estate, with the legatees and others, as follows:

*Dr.* *John Barnes, to Mary C. B. Barnes.*

To one-fourth of negroes, as per inventory, - - - - $2,337 50

Specific legacy, - - - - 3,000 00

$5,337 50

And on the other side, credited thus:

*Cr.* By your receipt, in full, - - $5,337 50

This charge is here made against himself, and in his character as guardian to the ward, *before her marriage.* Whose receipt in full is here meant and intended? Not *Compton's;* for *Mary C. B. Barnes* was not then married to him. But the answer avers, that the payment was made to *Compton* in his lifetime. This entry, therefore, can certainly not be used to support that allegation. To whom, then, was it paid? It is a forced construction, and also against the defence set up, to say it was paid to the ward. Besides, being an infant ward, she could give no discharge. But it is entirely consistent with the statement of the account, and the design of the book, to say it was paid to himself; that is, intended as a transfer, as administrator, to himself, to operate as a charge against himself, as guardian of his daughter. All the other entries in the book confirm this view. The entry preceding is:

"*Dr.    Henry Gardiner's guardian, to Samuel B. Gardiner.*
    To specific legacy to *Samuel B. Gardiner,*     $3,000

*Cr.*    (On the other side, as above.)   By your receipt,
        in full,    -      -      -      -      -   $3,000."

Thus shewing, that the account was liquidated by the receipt of the party against whom the entry and the charge is made, and corresponding with the credit which he claims in the distribution account of the estate in the orphans court, where this same amount is claimed and credited to the estate, as paid in distribution to "*Henry Gardiner*, guardian of *Samuel Bond Gardiner,* for a specific legacy of $3,000;" this book of accounts being a recapitulation, *seriatim*, of the distribution, and a reiteration only of the payment of this amount from him, as executor to *himself* as guardian, particularly as it is nowhere averred or claimed, that he paid the amount to his daughter, but, on the contrary, that he paid it to her husband, *William Compton.* And it will be observed, that the account does not purport to be any other than an account with himself, in which *John Barnes*, as guardian of his daughter, gives to *John Barnes*, the executor of *Samuel Bond*, a discharge, and takes to himself, as such, a receipt in full, or, in other words, a credit for the amount. This is the only interpretation to be given to the entry as it stands, and corroborates the charge of the appellees, that the proof of their claim would be sustained by the entries in this book, when produced. It does not satisfy us of the defence for which it is used. The law has defined, with peculiar strictness, the mode of discharging a guardian's account. We do not say it precludes the proof of a settlement *aliunde*, but it must be on clearer evidence than we think this account of the party himself furnishes, and we, of course, reject it.

The next evidence produced is a separate paper, no part of the account book, which purports to be the charges of the commissioner and clerk, for executing the commission in the cause, and upon the same paper, immediately following, is an account, thus stated: " *Wm. P. Compton*, exc'r, dr." " To one negro

man *John*, $362,50." And then follow some other small items, and it closes thus: "1829, by amount of *John Barnes'* draft, $500." This latter account is proved to be in the hand-writing of *Compton*, and, by the testimony of *Cox*, must have relation to this sale of a negro. All that he says is, that " the exhibit is in his handwriting, as far as the entry of the charge in said account of negro man *John*, and that he has no distinct recollection about the balance of said account." And on look-ing at the account again, says, "he had negroes of *H. Haw-kins* for sale, and, among them, one called *John*, and thinks the transaction must have taken place as there stated." Whether the draft was drawn *by John* or *on John Barnes*, does not appear. Whether on account of the legacy or not, is equally uncertain, as also the particular date of the transaction, which is covered by the whole year of 1829. *Barnes*, as we have seen, kept a book of account of his administration of the estate, and there is no entry there of this transaction. The record shows, that there were other claims of *Mrs. Compton* against the estate, and, even if it were shown that the draft was upon *Barnes*, and that he accepted it, it cannot still be as-sumed, that it was specifically on account of this legacy. The draft is not produced, nor is there any evidence that it was ever paid; and the transaction to which the account refers, seems to have been exclusively between *Compton* and *Cox*, and not *Compton* and *Barnes*. In any view we can take of it, with the aid of the oral testimony, it is altogether too uncertain to make it the basis here of a credit upon a guardian's account. Transactions between guardian and ward, should be made more lucid than this, to entitle the guardian to a discharge in equity. It may have been a payment, as contended for by the respondents, but when the evidence is committed to a loose piece of paper, it should, at least, appear in a more intelligible form, and susceptible of a clear interpretation. It would be to relax the rules of evidence too far, to allow evidence of this character to avail the party setting it up, and it is, of course, rejected here.

Of the same character is the other credit claimed, upon the

51    v.8

check of $1,500, in favor of *Wm. B. Compton,* or bearer, on the *Bank of Baltimore.* It is true, that the payment of it is proved at the bank out of the funds of *Barnes.* But *Compton* is no further identified with the transaction, than by the direction in the check to pay it to him or to bearer. Not the slightest intimation that *Compton* ever received the money, but what we are left to infer from the terms of the check. It is not even proved that the check ever came to the hands of *Compton.* Evidence of this character, so indefinite and vague, the courts of this State have so uniformly denounced, that we cannot for a moment hesitate to reject it. We can only pursue the principles long established in courts of justice in the application of this sort of evidence. It may be probable that this check was paid according to its tenor, but we are not at liberty to infer it. And if paid to *Compton,* whatever evil it works, is solely imputable to the party who is injured by his own laches.

The remaining evidence relied on, is still more exceptionable. *Compton,* it is said, at one time expressed to the witness a desire to buy lands, *if Barnes would settle with him.* He did purchase, about that time, land to the amount of $780. Without the slightest proof of his inability to purchase, independent of this supply from *Barnes,* we are asked, in effect, to credit this amount as money received from *Barnes,* and to apply it in payment, *pro tanto,* of the legacy. Such a conclusion from this vague declaration of a party, would do violence to the wildest possible presumption, and cannot for a moment be entertained by the court.

Upon a fair and liberal interpretation of this testimony, we can find no satisfactory proof of the payment alleged, either in whole or in part, of this legacy, from *Bond* to *Mrs. Compton,* or to her husband. It is not so reliable in any particular, as to justify the court in attaching to it the slightest attribute of certainty in its application to the case before us. There is evidence of transactions between *Barnes* and *Compton* in relation to moneys. But that they relate to this particular controversy, or sustain the construction claimed for them, is far from

being conclusive. When payments of this character, looking to the discharge of a guardian's account, are made, it is essential that the party, at his peril, should obtain and preserve the necessary and legal evidence to that effect, and however plausible the inferences may be from the transactions here set up between the parties, to allow them to prevail as conclusive against the complainant, would fix upon the administration of justice a character of instability and uncertainty, which it is the great object of the rules of evidence to avoid.

There is in the whole case no legal proof of any of the alleged payments. They rest upon testimony too weak to justify the conclusions claimed for it. And if they do, in reality, belong to the particular matter under inquiry, the payment of this legacy, it is the fault or misfortune of *Barnes*, that he has not left the key to their application. The neglect is his own, and whatever injury may result to his estate, (upon the hypothesis that it may have been paid,) is entirely to be imputed to his own want of ordinary prudence and caution. We can have no hesitation in affirming the decree of the chancellor.

DECREE AFFIRMED.