## HARRIS *v.* HARRIS

[No. 209, October Term, 1956.]

*Decided June 7, 1957.*

Before COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ., and KINTNER, J., Associate Judge of the Second Judicial Circuit, specially assigned.

Submitted on brief by *F. DeSales Mudd* and *Mudd & Mudd* for the appellant.

Submitted on brief by *George W. Bowling* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree ordering the respondent, Golon B. Harris, appellant, to pay his wife, Amelia L. Harris, complainant, appellee, alimony and support beginning on November 15, 1956.

The First Judicial District Court of the State of Nevada, having jurisdiction of the parties to this cause, by decree on January 19, 1942, divorced the appellant *a vinculo matrimonii* from the appellee and ordered him to pay her $100.00 per month alimony. The appellee later became a resident of the State of Florida where she still resides and has not remarried. The appellant, after his retirement from the Armed Forces, became a resident of Charles County, Maryland, where he still resides. He has remarried and has a child by his present wife. The appellant, by a subsequent motion addressed to the Nevada court, petitioned that court to strike out the previously ordered alimony payments. This motion was denied by that court on November 27, 1950. The appellee, by successive actions at law in the Circuit Court for Charles County, Maryland, had obtained three judgments against the appellant for alimony which had accrued and was in arrears under the Nevada decree. One judgment, dated February 21, 1949, was for $600.00; another, dated August 15, 1949, for $600.00; and the third, dated March 27, 1950, for $900.00. Two of these judgments had been unpaid at the time of the adjudication in the instant proceeding as unsatisfied obligations of record.

On January 8, 1953, the complainant filed a petition in the Circuit Court for Charles County in which she alleged the aforesaid decree of the Nevada court; that said decree had not been modified by said court; that the respondent had failed to comply with the terms of the aforesaid decree in the payment of alimony and was then in arrears in said payments in the amount of approximately $4,300.00 to and including December 15, 1952. Notwithstanding her repeated demands up to the time of the filing of the petition, she had received nothing from the respondent on account of said de-

linquent payments. The last payment made by him was the sum of $700.00 to cover payments up to May 15, 1949. In the petition she asked that the respondent be adjudicated in contempt of court for his failure to comply with the aforesaid decree of the Nevada court, and be cited by an order of the Circuit Court for Charles County to appear and answer "and abide by such order and judgment as this Court may see fit to pass". After an order overruling a demurrer to that petition, an answer was filed by the respondent admitting the proceedings in the State of Nevada and alleging that since the Nevada proceedings he has made payments to the complainant from time to time commensurate with his income and her requirements and that she has waived or rescinded further demands under the Nevada decree. He further alleged that the Circuit Court for Charles County was without jurisdiction to adjudge him in contempt for failure to comply with the alleged decree of the Nevada court.

The chancellor filed an opinion in the case on September 13, 1955, before the decision of this Court in *McCabe v. McCabe,* 210 Md. 308, 123 A. 2d 447, decided June 15, 1956. In the opinion in the instant case the chancellor held that the Maryland court could not enforce the Nevada decree by punishment by way of imprisonment. He was of opinion, however, that, although the complainant did not specifically ask for support in the decree, "* * * the relief sought is sufficiently broad to encompass the relief which should be granted without an amendment to the Complaint, even though there is no prayer asked for 'such further relief as to the Court may seem just and proper'. This is true because what the Complainant is really asking is not the punishment of the Defendant but the obtaining of the support provided for her." He set the matter down for hearing for the purpose of receiving additional testimony relative to the amount which should be ordered paid by the respondent to his former wife. Testimony of the complainant was taken by deposition and filed in the case on January 5, 1956. The financial statement filed in the case by the respondent showed that he has an income from Army retirement, annuity and salary of more than $8,000.00 per year, but no property other than an automobile for which total payment had not been made.

On November 3, 1956, after the *McCabe* case, *supra,* was decided, the chancellor filed a decree in which he recited the aforementioned decree of the Nevada court on January 19, 1942, requiring the respondent to pay the complainant $100.00 monthly as alimony and support. The decree also stated: "And, it also appearing that said decree had not been altered, changed, or modified, by the First Judicial Court of the State of Nevada, in and for the County of Ormsby, and this Court finding that the Defendant, Golon B. Harris, was in contempt of the First Judicial District Court of the State of Nevada, in and for the County of Ormsby, in that said Defendant had failed to make said monthly payments; and it further appearing from the testimony of the Plaintiff and Defendant that the sum previously awarded is consistent with the present needs of the Plaintiff, and that the Defendant is financially able at this time to pay the amount previously awarded," he ordered that the respondent pay the complainant $100.00 per month beginning on November 15, 1956, and costs.

On November 20, 1956, the respondent filed a petition to defer the alimony payments. No action was taken on that petition by the chancellor and on November 30, 1956, the respondent filed an appeal to this Court from the decree of November 3, 1956.

The respondent contends primarily that, because there was no specific prayer for general relief, the chancellor was without jurisdiction to pass the decree appealed from. He relies on *General Equity Rule 7* of this Court, in effect when this proceeding was commenced and finally determined, which provided in part:

> "All bills * * * shall contain simply a statement of the facts upon which the plaintiff asks relief, and, at his option, the facts which are intended to avoid an anticipated defense, and such averments as may be necessary, under the rules of Equity pleading, to entitle the plaintiff to relief, and the prayer for relief shall specify particularly the relief desired, and shall also contain the prayer for general relief."

By Rule 370 a 3, *Maryland Rules of Procedure,* in effect since January 1, 1957, it is provided:

"A bill or petition shall also contain prayers specifying particularly the relief sought, which shall be separately numbered, and may also contain a general prayer for such other and further relief as the case may require."

Of course, where there is a prayer for general relief and the specific relief cannot be granted, relief may be granted under the general prayer suitable to the peculiar nature of the case, and when a court of equity has once rightly assumed jurisdiction it will retain its jurisdiction in order to settle all questions that might arise out of the subject in controversy and give complainants complete relief, even in those respects in which it would not have had jurisdiction originally, thereby preventing a number of conflicting proceedings concerning the same subject. *McKeever v. Realty Corp.,* 183 Md. 216, 224, 37 A. 2d 305, and cases there cited; *Phillips Co. v. Md. Broadcasting Co.,* 184 Md. 187, 197. 198, 40 A. 2d 298.

The respondent also relies on the following quotation from *Miller's Equity Procedure,* Section 100, pages 128 and 129:

"There should be a special prayer, or prayers, for the particular relief sought, followed by a prayer for general relief. The latter can never be safely omitted; because if the plaintiff in his special prayer should mistake the relief to which he is entitled, the court may yet, under the general prayer. afford him the relief to which he has a right, provided it is such relief as is agreeable to the case made by the bill. But if there is no prayer for general relief, and the special prayer cannot be granted, no other relief can be given and the bill must be dismissed unless an amendment of the prayer is allowed."

In *Crain v. Barnes,* 1 Md. Ch. 151, relied on by *Miller, supra,* the prayer asked that the plaintiff "may have such relief as equity may require." It was contended that this

prayer was insufficient standing by itself and unaccompanied by any special prayer to grant the relief given in the decree. It was there said that the object of all pleading is to give parties notice of the "ground of claim" and when that was done the object of the rules of pleading was obtained. It was there pointed out that the defendants in the case had notice by the bill of the relief sought against them.

In *McCabe v. McCabe, supra,* the parties lived in Maryland where two children were born to them. The husband subsequently procured an absolute divorce in Nevada where the court ordered the husband to pay the wife permanent alimony and support for the children. The wife continued to live in Maryland with the children, and the husband finally returned to Maryland. It was there asked by the wife that the Maryland court enforce the decree of the Nevada court. The wife alleged that the husband owed her $25,890.00 in accrued and unpaid alimony and support installments at the time the case was filed in Maryland. The bill asked that the Maryland court decree that $25,890.00 was then due the wife and that it adopt the Nevada decree as its own and enforce it as was customary under the laws of Maryland. A demurrer to the bill was sustained by the chancellor, who transferred the case to the law side of the court. This Court, in holding that the chancellor erred in sustaining the demurrer and transferring the case to the law side of the court, said at pages 317 and 318: "We need not and do not decide now the answer to the various problems that may arise in the enforcement in equity of foreign decrees for alimony and support. We decide only that in Maryland an equity court can enforce a decree of another state, both as to alimony accrued and to accrue, and may use for its enforcement the same equitable remedies and sanctions it could use to enforce a decree it had duly entered in the first instance, even as the Legislature has said it may use such remedies and sanctions to enforce orders of support under the Uniform Reciprocal Enforcement of Support Act, Code, 1951, Art. 89C, Sections 13 and 15." The respondent in his brief admits: "No attempt is made here to defend or to condone the apparent previous attitude of the appellant towards the payment of alimony to his former

wife, which this Court has definitely held to be a duty and not a debt. *Safe Deposit & Trust Co. v. Robertson,* 192 Md. 653 [65 A. 2d 292]."

Under the *McCabe* case, *supra,* the Maryland court had the power to enforce the Nevada decree and use the same equitable remedies and sanctions to enforce it as if it were a Maryland decree. Although the specific relief sought here was punishment by way of imprisonment, the primary purpose of the bill was to obtain support for the wife. The respondent had notice of the claim of the complainant as in *Crain v. Barnes, supra,* where the prayer was for such relief as equity may require. We are of opinion that, under the prayer here, that the respondent be required to abide by such judgment as the equity court may see fit to pass, the chancellor had jurisdiction to order the payment of the alimony instead of punishment for contempt.

Although the decree stated that the respondent was in contempt of the Nevada court for failure to pay the back payments, no order was made by the chancellor as to the alimony which had accrued previous to November 15, 1956. The complainant in her brief so construes this order by the following statement: "In this particular case the Court made no order as to the alimony which had already accrued, but passed an order ordering the Defendant to pay to his wife the sum of One Hundred ($100.00) Dollars per month, based on the testimony which the Chancellor heard dealing with the necessities of the wife and the ability of the Appellant to pay." By so doing she cannot later contend that the decree of November 3, 1956, from which the appeal is taken, in any way made any order affecting past due alimony. We so hold. As the Maryland court had power to enforce the Nevada decree, the order that the respondent pay the complainant $100.00 per month, the exact amount as ordered in the Nevada decree, was simply an enforcement of that decree, permitted under the *McCabe* case, *supra.* The decree will be affirmed.

*Decree affirmed, with costs.*