### GAIL H. TERRY v. DENNIS H. TERRY

[No. 129, September Term, 1981.]

*Decided October 13, 1981.*

The cause was argued before Mason, Wilner and MacDaniel, JJ.

*Peter J. Messitte,* with whom were *Messitte & Rosenberg, P.A.* on the brief, for appellant.

*Nelson M. Oneglia,* with whom were *Horowitz, Oneglia, Goldstein, Foran & Parker, P.A.* on the brief, for appellee.

Wilner, J., delivered the opinion of the Court.

Appellant complains here of an order of the Circuit Court for Montgomery County that, to her dismay, reduced the amount of alimony and child support that she was theretofore entitled to receive.

The circumstances were as follows.

The parties were married in 1961. They lived together until May, 1974, producing in the interim two children — Susan, born in February, 1967, and Gregory, born in November, 1969. In September, 1974, they entered into a property settlement agreement which, among other things, provided for appellant to have custody of the two children, required appellee to pay alimony and child support, and directed him to provide certain medical and life insurance coverage for the children. The alimony was to be at the rate of $650 per month for the first six months, $550 per month for the following six months, and thereafter, until appellant's death or remarriage, $425 per month. Child support was set at $200 a month per child through August 31, 1975, and thereafter $250 a month, subject to biannual escalations in proportion to increases in the Bureau of Labor Statistics Consumer Price Index.

On October 24, 1975, the parties entered into an "Agreement of Modification," under which appellee assumed

the additional obligation of paying all necessary dental bills for the children, but which provided that "[i]n every other respect, the Agreement of the parties dated September 25th, 1974, is hereby continued without alteration as to each and every paragraph and tenet contained therein."

On January 28, 1976, the Circuit Court for Prince George's County entered a decree of divorce. The decree approved and incorporated by reference all the terms in both the initial property settlement agreement and the October, 1975 agreement of modification.

All went reasonably well until February, 1979. Appellee, it appears, was about to lose his $36,000 a year-plus-company-car job, and thus decided, unilaterally, to reduce his alimony and child support payments by $400 a month. At the time, his alimony was to be $425 a month and his child support, by reason of index escalations, was set at $285 per month per child.

Concerned about her loss of support and complaining further that appellee was about to allow the required medical and life insurance coverage to terminate and that he was refusing to pay for Susan's orthodontic therapy, appellant filed in the Circuit Court for Montgomery County [1] a petition (1) to specifically enforce the terms of the agreements, as incorporated in the divorce decree, (2) for a judgment equal to all sums due under the decree (support arrearages, amounts necessary to replace the insurance coverage, and the cost of the orthodontic treatment), (3) to find appellee in contempt, and (4) for miscellaneous relief.

Appellee responded with a cross-petition contending that he was then unemployed, that appellant (who had been unemployed at the time of divorce) had become employed full time, and that the combination of those events constituted a change of circumstances. He asked that (1) his child support be reduced to $200 a month per child and (2) alimony be

---

1. The complaint was filed in Montgomery County because appellee was then a resident of that county. Appellant, in the meanwhile, had moved to Virginia.

reduced or eliminated, or, in the alternative, suspended until he regained his former earnings level.

On May 15, 1979, while this bill and cross-bill were pending, the parties entered into a "Stipulation." This written document, signed by the parties, acknowledged the 1974 agreement, the 1975 modification, the divorce decree, and the pending litigation, and stated that "[i]n the interest of amicably working out the differences between the parties as to the application of the aforesaid Agreements and Decree, *the parties hereby agree to the following terms, pending further hearing in this cause.*" (Emphasis supplied.)

The stipulation then recited that (1) appellee agreed to comply with the agreements and decree "in all respects, except that his obligation to pay alimony thereunder is hereby reduced to $200.00 per month. Said payments of alimony shall remain fixed at $200.00 per month, *pending further hearing in the cause.*" (emphasis supplied); (2) appellee and appellant would exchange notarized statements pertaining to their respective employments, income, and insurance policies; and (3) appellee consented to a judgment of $1,200 for current alimony arrearage, to be paid within three weeks.

The next day — May 16, 1979 — the court entered a "consent order" ratifying, confirming, and incorporating "the terms of the attached Stipulation."

On May 29, 1980, appellee inaugurated the instant controversy with a petition, in the same proceeding, to reduce the amount of *child support* and for such other and further relief as the court may find just and proper. Though claiming reemployment and an income of $37,000 a year, he averred an inability to continue the child support payments at the decretal level. *He made no complaint about the alimony and did not ask for any modification of it.* Appellant responded, in part, with a counter-petition to increase the amount of child support and "*restore or increase, according to evidence to be presented to the Court, the amount of alimony* payable to her. . . ." (Emphasis supplied.) In support of

her request for a restoration of or increase in alimony, she acknowledged that the earlier reduction *via* the consent order was "pending further hearing in the cause," and alleged that by reason of appellee's improved financial status and the insufficiency of her income, she was "entitled to a restoration of or increase in her alimony payments."

The show cause orders issued by the court pursuant to these pleadings reflected the specific relief prayed. Thus, the order issued pursuant to appellee's petition directed appellant to show cause "why the *child support* payments in the above captioned matter should not be reduced," (emphasis supplied) and the order attendant to appellant's counter-petition directed appellee to show cause why child support and alimony payments should not be *increased.*

In accordance with Sixth Circuit Rule S 74, the entire matter was referred to a domestic relations master. After receiving and considering evidence of the parties' respective financial circumstances, the master concluded that (1) although not prayed in the petition or recited in the court's ensuing show cause order, reduction in *alimony* was an issue in the case, as was a modification of child support, and (2) based on the evidence, appellant's alimony ought to be reduced to $66.36 a month and appellee's contribution to child support ought to be reduced to $325 per month per child. Appellant excepted to both recommendations, but, after a hearing, the court overruled the exceptions. It is from that order overruling the exceptions that this appeal is taken.

The following questions are presented:

> "I. Did the Chancellor err in permitting the Master to consider a reduction of alimony, where the only language in the Show Cause Order relevant to alimony directed the Appellee to show cause why Appellant's alimony should not be 'increased'?
>
> II. Did the Master and Chancellor err in finding that the Stipulation of the parties entered into on May 15, 1979 had the effect of modifying the

Agreement of the parties dated September 25, 1974, so as to convert non-technical alimony into modifiable, technical alimony?

III. Assuming the Stipulation of the parties of May 15, 1979, did modify the earlier agreement of the parties, such that the Court had power to modify alimony, did the Master and Chancellor err in not using May 15, 1979, as the base date for determining whether certain circumstances had changed since that time, for purposes of modifying alimony and child support?

IV. Should Appellant be awarded counsel fees for the prosecution of this appeal?"

Though appellant states the proposition somewhat imperfectly, we think there is merit to her first complaint. We think that, in light of the pleadings, it was inappropriate for the master to recommend and for the court to order a reduction in appellant's alimony. As a result of that conclusion, it becomes unnecessary for us to address her second question. With respect to the other two issues, we find no error in the reduction of child support and conclude, in light of her resources, as disclosed in the record, that appellant is not entitled to an additional award of counsel fees.

### (1) *Decrease in Alimony*

As we have noted, appellee made no request in his petition for a reduction in alimony. Nor did he complain, in any of his averments, that the amount of alimony payable under the consent order was excessive, that appellant was not in need of it, or that he was unable to afford to pay it. His sole complaint concerned the amount of child support which, of course, had increased significantly since the 1974 agreement.[2] That, and that alone, is what the court directed appellant to address.

---

2. The record indicates that child support payments had risen from the $500 per month provided for in the agreement (after August 31, 1975) to $686 per month.

The first mention of a reduction in alimony was in a memorandum of law filed by appellee on October 22, 1980 — the very day of the master's hearing. The principal legal issue then (and now) was whether the amount of spousal support was subject to modification by the court. Appellant's position (notwithstanding her alternative prayers for restoration *or increase*) was that the $425 provided for in the original agreement and decree amounted to contractual support rather than modifiable alimony because there was no provision for its termination upon appellee's death (*see Simpson v. Simpson,* 18 Md. App. 626 (1973) and cases cited therein), and that because the decree was entered prior to April 13, 1976, the provisions of Acts of 1976, ch. 170 were not applicable.[3] Thus, she maintained that the court's only authority was to restore the non-modifiable amount of $425 a month — an amount that she had voluntarily (and temporarily) consented to be reduced during the period of appellee's unemployment.

Appellee, in his memorandum, conceded that, so long as the support provisions contained in the 1974 agreement remained intact, they were not subject to the 1976 Act and were thus not subject to modification by the *court.* He contended, however, that the 1979 stipulation amounted to a novation of sorts — a permissible modification by the *parties* — and that served to bring the provisions within the Act and subject it to further *court* modification. It was in that context that, for the first time, he asked "that the alimony in this case be either reduced or terminated." Appellant objected, both at the beginning and at the conclusion of the master's hearing, to any consideration being given to a

---

**3.** That Act amended Md. Ann. Code art. 16, § 28 (1957, 1973 Repl. Vol., 1975 Supp.), to provide that any provision in an agreement between spouses "in respect to alimony, support and maintenance of the husband or wife is subject to modification by the court to the extent the court deems just and proper regardless of the manner in which [those provisions] are expressed or stated unless there is an express waiver of alimony, support and maintenance by the husband or wife or unless [the agreement] specifically state[s] that [those provisions] are not subject to any court modification." The Act further provided, however, that it would have no effect upon any settlement or agreement occurring prior to its effective date, which was April 13, 1976.

decrease in alimony on the ground that the matter had not been raised in the pleadings.

Appellee argued below and argues to us that a reduction in alimony was permissible under his general prayer for "other and further" relief, citing *Simpson.*

Use of a general prayer for relief has a long tradition in equity pleading and practice. At least as early as *Gibson v. McCormick,* 10 G.&J. 65, 108 (1838), the Court of Appeals made clear that "[n]othing is better settled than that if a complainant cannot obtain the specific relief for which he prays, he may obtain any relief consistent therewith, *warranted by the allegations in his bill,* provided it contains a prayer for general relief." (Emphasis supplied). *See also Bently v. Cowman,* 6 G.&J. 152, 155 (1834), and *Chalmers v. Chambers,* 6 H.&J. 29, 30 (1823). The limitation, or caveat, expressed in *Gibson* was expressed as well, but somewhat differently, in *Chalmers.* There, the Court stated, at 30, that "[a]s to the relief to be given, under a general prayer, the rule is, that it must be agreeable to the case made by the bill, and not different from it, or inconsistent with it."

Some of these thoughts were distilled by Chancellor Johnson in *Crain v. Barnes,* 1 Md.Ch. 151 (1947), *aff'd,* 8 Gill 391 (1849). The complainant there, as next friend of a minor, sued to recover a legacy due the minor. The bill of complaint contained no special prayer for relief but asked only for such relief as equity may require, and the absence of a special prayer formed one of the defenses raised to the bill. To this, the Chancellor responded:

> "The object of all pleading is, to give to parties notice of the ground of claim, and defence, or upon which demands are asserted or resisted, and when this is done, the object of the rules of pleading is attained. Now, there can be no doubt that the defendants in this case had notice by the bill, of the relief which was sought against them. They know that the object of the complainants was to make them pay this legacy; and they defend themselves against

the demand, by stating, in their answer, that it had been wholly or partially paid.

They cannot, therefore, complain that they have been taken by surprise, when the **relief** sought under the general prayer of this bill in [*sic,* is] the identical relief against which the answer sets up the defence." *Id.* at 156.

Referring then to the earlier cases of *Chalmers, Bentley,* and *Gibson,* the Chancellor concluded that "the extent and character of the relief which may be granted under the general prayer, depends upon the facts charged in the bill," and that if a complainant is for some reason not entitled to specific relief prayed for, he may obtain under a general prayer "any relief consistent therewith, warranted by the allegations of his bill. . . ." *Crain, supra,* 1 Md.Ch. at 156-57.

These early cases, though providing for a considerable amount of discretion and flexibility under a general prayer, do place some limits on the court's authority. The relief given under such a prayer must be "warranted by the bill"; the bill, in other words, must contain such averments as fairly to apprise the respondent that the particular form of relief fashioned by the court is within the range of reasonable possibility if the complainant proves those averments.

These concepts, though occasionally expressed in different ways, have remained firm in the law. In *McKeever v. Washington Heights Realty Corp.,* 183 Md. 216, 224 (1944), for example, the Court held that relief under a general prayer must be suitable to the peculiar nature of the case: "While a complainant is not entitled to relief beyond the general scope and object of the bill or inconsistent with it, the court is left free to adopt any mode by which it can most readily and effectually administer that relief which the equity of the case may require." *See also Chesapeake Homes, Inc. v. McGrath,* 249 Md. 480 (1968); *Boehm v. Boehm,* 182 Md. 254 (1943); Miller, *Equity Procedure,* § 100 (1897); Ginsberg, *Equity Jurisprudence and Procedure,* 267. The latent, but omnipresent, limitation is the general object of

all pleading "to give the parties notice of the ground of claim. . . ." *See Fisher v. Parr,* 92 Md. 245, 268 (1901); *Findlay v. The Baltimore Trust and Guarantee Co.,* 97 Md. 716, 722 (1903); *Harris v. Harris,* 213 Md. 592, 597-98 (1957); *see also* Maryland Rule 370a.2: "*A bill or petition shall contain a concise statement of the facts upon which the plaintiff seeks relief, and such averments as may be necessary to entitle him to the relief sought. . . .*" (Emphasis supplied.)

Relief under a general prayer has, of course, been granted in domestic relations cases, but never, to our knowledge, in the manner done here. In *Harris v. Harris, supra,* the complainant filed a petition to hold her ex-husband in contempt of court for failing to pay alimony awarded under a Nevada divorce decree. Her bill also contained a general prayer for relief. The case arose before the decision in *McCabe v. McCabe,* 210 Md. 308 (1956), and the chancellor initially concluded that he had no authority to enforce a Nevada alimony decree by means of imprisonment for contempt. He did, however, under the general prayer, order the husband to pay the alimony. Against the ex-husband's challenge that such relief was inappropriate because it was not specifically requested, the Court of Appeals, citing *Crain v. Barnes, supra,* held that "[a]lthough the specific relief sought here was punishment by way of imprisonment, the primary purpose of the bill was to obtain support for the wife." Thus, it said, the respondent "had notice of the claim of the complainant," and the chancellor "had jurisdiction to order the payment of the alimony instead of punishment for contempt." *Harris, supra,* 213 Md. at 599.

In *Simpson v. Simpson, supra,* the case most relied upon by appellee and the chancellor — a husband filed a bill seeking to "terminate" alimony, and for other general relief. The chancellor dismissed the bill, finding that the support in question was contractual in nature and not subject to modification. We concluded that he was correct — that he "properly declined to terminate *or modify* the payments." (Emphasis supplied.) *Id.* at 631. In so stating, Judge Powers, writing for the Court, added this footnote to the words "or modify":

"Although the petition specially prayed only that the payments be terminated, we think the prayer for other and further relief was a sufficient basis to permit modification of the payments, were it otherwise appropriate to do so." *Id.*

It is important to put that footnote — which is all that appellee points to in *Simpson* — in its proper perspective. It is not a holding of this Court. It is perhaps the clearest example of *obiter dicta,* having no precedential value whatever. We decided in *Simpson*, as a matter of law, that neither termination nor modification was permissible, and thus it would make no difference what might otherwise be appropriate under the general prayer. Moreover, even if the footnote is a correct expression of the law, it would not necessarily justify the action taken here. It is implicit from the context of the language that, in speaking of "modification of the payments," we had in mind a *reduction,* not an *increase.* A reduction in amount would not be inconsistent with a bill to terminate the alimony; an increase, on the other hand, would be flatly inconsistent with, and thus wholly unwarranted by, a bill to terminate the payments.[4]

That, of course, is precisely what occurred here. Alimony was in issue only in the context of appellant's petition to restore it to the pre-1979 level, or to increase it beyond that. As we observed earlier, appellee never contended in his petition that the $200 level was inappropriate or that he could not afford to pay it. His only complaint, as noted, concerned child support. Unlike *Harris* and the other cases sustaining relief granted under a general prayer, appellant went into the hearing entirely without warning that the current level of her alimony was in jeopardy of being reduced. Neither appellee's petition nor the show cause order issued pursuant to it fairly apprised her of such a possibility. Appellee could, of course, have amended his petition to challenge the ali-

---

4. *Compare LaChance v. LaChance*, 28 Md.App. 571 (1975), where we found that a bill seeking alimony would, under a general prayer, permit the court to award support and maintenance provided for in a separation agreement in lieu of "technical alimony."

mony — he had ample time to do so — but he chose not to do that.

In that circumstance, we think that the master and the chancellor erred in considering and ordering a reduction in alimony. It may well have been justified by the evidence (an issue we need not decide) but it clearly was not "warranted by the allegations in [appellee's] bill"; it was not "agreeable to the case made by the bill."

## (2) *Other Issues*

We find it unnecessary to recount the evidence of the parties' financial circumstances relied upon in reducing the amount of child support or with respect to appellant's request for an award of additional counsel fees. Suffice to say that we have reviewed the record and find no clear error or abuse of discretion as to the former, and no occasion to grant the latter.

> *Judgment as to child support affirmed; judgment as to alimony reversed; costs to be divided equally between the parties.*