501 A.2d 97

**John H. BOUCHER**

v.

**Susan F. Boucher SHOMBER.**

**No. 326, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Dec. 9, 1985.

William L. Haugh, Jr., Frederick, for appellant.

W. Milnor Roberts, Frederick, for appellee.

Argued before MOYLAN, GARRITY and ROSALYN B. BELL, JJ.

GARRITY, Judge.

Our examination shall focus upon the jurisdictional authority of a chancellor and the related procedure to be utilized in providing general relief in the form of a money judgment towards a child's educational expenses that had not been specifically determined in a prior divorce decree.

### Facts

On June 25, 1955, John Boucher married Susan Boucher in LaCrosse, Wisconsin. The couple have four daughters, Holly (born December 7, 1958), Susan (born June 30, 1960), Jennifer (born March 13, 1963), and Carrie (born November 7, 1966).

On December 5, 1972, the couple entered into a voluntary separation agreement. On July 25, 1973, the Bouchers were divorced *a vinculo matrimonii* in the Circuit Court for Frederick County. The divorce decree incorporated the separation agreement. The decree stated, in pertinent part:

The Husband shall have transferred to him full and complete control of the scholarship fund of HOLLY KATHERINE BOUCHER as a consideration of costs and expenses of the post-secondary education of all of the aforesaid children, limited to a college of their choice located in the State of residence at the time said child terminates the secondary education. The aforesaid assumption of payment for said post-secondary education, as to each such child, shall commence on the completion of a public high school at which time the Husband's obligation for support, as to each child shall terminate.

In June of 1977, Holly, the eldest daughter, graduated from high school in Frederick, Maryland. Mrs. Boucher (now Shomber) thereupon moved to Florida with her four daughters. In the winter of 1978, Holly attended a local community college in Florida. In June of 1978, she began her studies at the University of Florida. The following May, the parties returned to the Frederick County Circuit Court, pursuant to Mrs. Boucher's petition for contempt and modification. On May 4, 1979, the Circuit Court for Frederick County entered an Order of Court based on consent of the parties. The order provided, in pertinent part:

B. That the Respondent is hereby ordered to pay unto the Complainant the sum of Two Thousand Six Hundred Nineteen Dollars ($2,619.00) which represents the college expenses to date of Holly Katherine Boucher, and contin-

ual expenses until completion of undergraduate studies;
. . .

C. That the Respondent is henceforth responsible for college expenses incurred by Holly Katherine Boucher, Jennifer Ray Boucher and Carrie Beth Boucher, conditional to the extent that the above listed children attend a four-year consecutive course of studies at a State-supported school immediately upon termination of their secondary education, and further, that the Complainant will cooperate in all regards in securing financial aid, grants, scholarships, and other available resources to help alleviate any college expenses incurred by the above listed children, provided, that the children and Complainant are not subject to personal obligation for repayment of same.

Holly continued her education at the University of Florida, and she graduated with honors from that institution in the spring of 1983. Evidently, however, her father had paid little or nothing toward this education. Therefore, on May 26, 1983, Mrs. (Boucher) Shomber filed against her former husband another petition for contempt in the Circuit Court for Frederick County. Mr. Boucher answered the complaint and cross-petitioned to modify the 1979 decree.

On December 16, 1983, the chancellor held a lengthy hearing pursuant to the petitions. At that hearing, Mr. Boucher successfully raised the issue of a one-year period of limitations as to his liability to pay his daughter's college expenses. Pursuant to a petition for rehearing submitted by Mrs. Shomber, however, the chancellor determined on March 5, 1984, that, as the payments were analogous to child support, the three-year period of limitations under FL § 10–102 was applicable. In an effort to provide Mr. Boucher with an opportunity to present evidence of additional payments, the chancellor continued the matter until December 7, 1984. Up to this point in the proceedings, we note that the equity court had not issued a decree. On December 27, 1984, the court awarded a money judgment in the amount of $16,084.83. While not making a finding as to whether Mr. Boucher was in contempt of court, the court

did detail the amounts Mr. Boucher owed his former wife.[1] Mr. Boucher has appealed the December 27 judgment to this court and raises several issues for our review, which we rephrase as follows:

First, he asks whether the trial court could render a judgment without finding Mr. Boucher in contempt.

Second, he asks whether, in fact, the court did hold Mr. Boucher in contempt, since it could not do so for a failure to pay an indefinite sum (i.e., the "reasonable college expenses" of Holly).

The third and fourth issues are whether Holly fulfilled her duties that arguably triggered his payment obligations.

Fifth, Mr. Boucher contends that the chancellor abused his discretion by dismissing Mr. Boucher's cross-petition for modification.

Sixth, Mr. Boucher reiterates his limitations argument based on the equitable doctrine of laches.

Finally, he contends that his daughter's registration for financial aid terminated his liability to pay her college expenses.

## Jurisdiction and Procedure

The first two of the issues raised by Mr. Boucher concern the nature of the equity court's action. At the outset, the appellant claims that the chancellor's order was ambiguous. He points to the fact that the judgment neither granted nor

---

1. Mrs. (Boucher) Shomber sought reimbursement for the following periods: Fall, 1979; Winter, 1980; Spring, 1980; Summer, 1980; Fall, 1980; Winter, 1981; Spring, 1981; Summer, 1981; Fall, 1981; Spring, 1982; Summer, 1982; Fall, 1982; and Spring, 1983. (Apparently the University of Florida conducted courses on a trimester or quarterly basis until the Fall of 1981, when it shifted to a semester schedule.) Holly included the following as college expenses: rent, tuition, utilities, food, books, and transportation. She also included a category for "miscellaneous." Her sorority fees were disallowed by the judge. His award was for the allowed expenses for the following periods: Spring, 1980 (one-third of this period); Fall, 1980; Winter, 1981; Spring, 1981; Fall, 1981; Spring, 1982; Summer, 1982; Fall, 1982, and Spring, 1983.

dismissed the petition for contempt. On the other hand, the appellant notes that the following colloquy took place at the December 16, 1983, hearing between the chancellor and counsel for appellee:

> THE COURT: [T]here's no doubt in my mind that this is a contempt proceeding. It's been titled so, it's relief asked, for a finding of contempt, an amended petition for contempt, and—
>
> MR. ROBERTS: Your Honor, as I said, I think the law cases said in the past that the titling doesn't bind us—the clear—
>
> THE COURT: I agree with that.
>
> MR. ROBERTS: Okay.
>
> THE COURT: There's no question about that; but all the relief has to do with contempt too.
>
> . . . . .
>
> MR. ROBERTS: —But I'm suggesting there's additional relief requested, ... the money judgment and attorney's fees and whatever that's in addition, and this Court has the authority to enforce its decrees by money judgments. That's what we requested.
>
> THE COURT: Only in contempt proceedings, that's the point.
>
> . . . . .
>
> THE COURT: I'm going to find Mr. Boucher in contempt of court. I'm going to suspend the imposition of sentence by entering a money judgment against him....

There is, however, no reason for Mr. Boucher's confusion. A finding of fact or conclusion of law, unless embodied in an order or decree, or any other form of decision approved by the court, and entered on the docket, is not a part of a judgment. Md.Rule 2–601. *See Reddick v. State,* 213 Md. 18, 31, 130 A.2d 762 (1957). cert. den. 355 U.S. 832, 78 S.Ct. 50, 2 L.Ed.2d 44 (1957); *see also Kelley v. Davis,* 233 Md. 494, 497, 197 A.2d 230 (1963). Such a view is nothing new in Maryland. In *Alleghany Corporation v. Aldebaran Corporation,* 173 Md. 472, 196 A. 418 (1937), the Court of

Appeals declared: "[A]n opinion, however positive, is not in any sense a final act, it is not the subject of appeal, and it may always be changed before final decree. The reasons assigned for a decree are no part of the decree itself." 173 Md. at 478–79, 196 A. 418, quoting from Miller, *Equity Procedure* § 260. Therefore, it would appear from the final judgment passed in this matter that the chancellor failed to find the appellant in contempt.

■ Thus, we must determine precisely what action the equity court was taking. As the appellant correctly notes, he could not have been found in contempt for failure to pay an indefinite sum. The seminal case on an equity court's proceedings in the enforcement of a divorce decree is *Kemp v. Kemp*, 287 Md. 165, 411 A.2d 1028 (1980). In that case, the court's decree incorporated the separation agreement of the parties. One provision of the agreement declared that "the Husband further agrees to pay reasonable medical and dental expenses for said minor children...." Mrs. Kemp sought reimbursement for her payment of their son's medical expenses following his psychiatric treatment. The Court, relying on its prior decision in *Gromer v. Davis*, 260 Md. 471, 272 A.2d 621 (1971), held that an equity court did have jurisdiction to set an award pursuant to its prior decree. 287 Md. 173–74, 411 A.2d 1028.

■ Because of the similarity between the reasonable medical expenses in *Kemp* and the "continual expenses" for Holly in the 1979 decree herein, *Kemp* speaks to that case as well as the matter *sub judice:*

Once the court decides to incorporate an agreement between the parties as part of its decretal relief, ... the agreement is included within the order and is enforceable as a valid provision of the decree. *See Lewis v. Lewis,* 256 Md. 45, 55, [259 A.2d 246] (1969); *Langville v. Langville,* 191 Md. 103, 110 [60 A.2d 206] (1948); *Foote v. Foote,* 190 Md. 171, 177 [57 A.2d 804] (1948); *Dickey v. Dickey,* 154 Md. 675, 680–81 [141 A. 387] (1928). This does not mean, however, that the equity court may invari-

ably utilize the full panoply of the enforcement powers granted to it by Md. Rule 685 (now Md.Rule 2–648)....
[To enforce a provision requiring payment of certain reasonable expenses,] the equity court would first have to hold such further proceedings as it deems appropriate to determine the amount owing under this provision, then enter an order to pay a specified amount of money, which if deemed an award for support, could at that time be enforced by the contempt power upon a failure to pay.

287 Md. at 175, 411 A.2d 1028. Therefore, *Kemp* describes a four-step procedure. First, there is the separation agreement. Second is the divorce decree incorporating the agreement. Third, there must be a proceeding in which the equity court, retaining jurisdiction over the divorce decree, sets whatever amount that was undetermined in the divorce decree. Fourth, and finally, if the order of payment is not forthcoming, the equity court may find a non-paying party in contempt, upon proper petition thereof. Such a continuing review of a divorced couple's relative rights and duties under the divorce decree is consistent with the powers and jurisdiction of an equity court. *See* FL § 1–201 and § 1–203 (formerly CJ § 3–603); *Winston v. Winston*, 290 Md. 641, 648–53, 431 A.2d 1330 (1981) ("The General Assembly was unambiguously endowing the equity court sitting in divorce ... with the general powers normally exercised by that court in other matters."); *see also Brewster v. Brewster*, 207 Md. 193, 199, 114 A.2d 53 (1955) ("And it is well settled that the jurisdiction of an equity court, once acquired, continues until all matters in litigation are finally disposed of.").

█ As a corollary to the court's action in this case, it is insignificant that the court was responding to a petition that was merely titled as one for contempt. When, as here, a petition includes a prayer for general relief, as long as the allegations suffice to give notice to the respondent, any relief consistent therewith is proper. *McKeever v. Washington Heights Realty Corporation*, 183 Md. 216, 224, 37 A.2d 305 (1944); *Boehm v. Boehm*, 182 Md. 254, 34 A.2d

447 (1943); *Whitman v. Forney,* 181 Md. 652, 659, 31 A.2d 630 (1943); *Chesapeake and Curtis Bay Railroad Company v. Richfield Oil Corporation,* 180 Md. 192, 195, 23 A.2d 677 (1941); *Terry v. Terry,* 50 Md.App. 53, 60–61, 435 A.2d 815 (1981).

Essentially, the court was simply retaining its jurisdiction in furtherance of its power and duty to enforce the rights of the parties under its earlier decree. The case of *Harris v. Harris,* 213 Md. 592, 132 A.2d 597 (1956) is particularly instructive. In that case, the wife filed a contempt petition in accordance with a Nevada divorce decree. The Court of Appeals held that, while the wife had sought specific relief in the form of imprisonment of her husband, the equity court's order that the husband pay $100 per month in alimony was proper. This was because the husband had notice of the claim of his wife from the allegations in the petition. Furthermore, as the Court declared,

> Where there is a prayer for general relief and the specific relief cannot be granted, relief may be granted under the general prayer suitable to the peculiar nature of the case, and when a court of equity had once rightly assumed the jurisdiction it will retain its jurisdiction in order to settle all questions that might arise out of the subject in controversy and give complainants complete relief, even in those respects in which it would not have had jurisdiction originally, thereby preventing a number of conflicting proceedings concerning the same subject.

213 Md. at 597, 132 A.2d 597.

■ Therefore, it is clear that the court here was not holding Mr. Boucher in contempt but was instead properly determining the relative rights and obligations of the parties to its prior decree. Consequently, the chancellor, contrary to the arguments of the appellant, was not holding Mr. Boucher in contempt for failure to pay an indefinite sum. If the definite sum of $16,084.83 is not satisfied by Mr. Boucher, the fourth stage of *Kemp*—that of an actual finding of contempt—would then be proper upon petition.

*Conditions Precedent*

■ The third and fourth arguments of the appellant relate to his contention that Holly did not perform certain conditions precedent described in the 1979 decree. We believe the determination by the chancellor not to penalize Holly for the interruption was reasonable under the circumstances. At the core of appellant's argument is the fact that Holly took more than four years to complete her college education. While paragraph B of the 1979 decree orders Mr. Boucher to pay for the "continual expenses until completion of undergraduate studies" of Holly, paragraph D states that Holly must attend a "four-year consecutive course of studies at a State-supported school immediately upon termination of . . . secondary education."

Mr. Boucher concedes that paragraph D's restriction of an immediate entrance into college upon graduation from high school makes little sense as applied to Holly. On the other hand, appellant stresses the fact that Holly began the University of Florida in June, 1978 but did not graduate until the spring of 1983. Therefore, she was a student for the school years of 1978–79, 1979–80, 1980–81, 1981–82, and 1982–83. Clearly, this is a five-year period. The chancellor took into consideration, however, that Holly's education had been partially interrupted by serious illness which required her to be hospitalized twice during the period.

Moreover, Holly undertook to fulfill the condition that she reduce as much as possible her father's liability. First, she did not enter the University of Florida until she had gained resident status. This status greatly reduced her tuition. Second, she applied for, and received, scholarship grants. Third, she applied for, and received, a loan with a low interest rate. Finally, she worked as a waitress and in a store to further offset her costs. While appellant emphasizes that Holly did not work on campus, there is no evidence that a campus job would have paid more.

### Defense of Laches

■ Mr. Boucher also raises the equitable defense of laches. He claims that since his ex-wife did not immediately bring him to court after he had initially failed to comply with the 1979 decree, she had in 1983 lost her right to do so. We reject his specious argument. The defense of laches is based on an "inexcusable delay." Here, it appears from the record that Holly and Mrs. Shomber had a reasonable expectation that their difficulties with Mr. Boucher would be resolved among the parties, especially so after he signed the consent decree. Holly testified that she wrote to her father in January, 1980 and explained her financial situation. Her father came to Florida in March of that year and again in the summer of 1980. On each of these occasions, father and daughter spoke at length about college expenses. Furthermore, the limitation period for filing a contempt petition for failure to make support payments is three years within the date such payments become due. FL § 11–102. It is well settled that an equity court will apply the equitable doctrine of laches in a manner consistent with an analogous statute of limitations at law. *See Green v. Green,* 288 Md. 127, 133, 415 A.2d 1131 (1980). The limitation period applied by the court below was proper.

### Abuse of Discretion

■ Appellant next contends that the chancellor abused his discretion in dismissing the appellant's cross-petition for modification of the 1979 decree. Again, the task for the chancellor was to balance the equities. Here, while it is true that the appellant had retired since the 1979 consent decree, it is also a fact that his obligation to provide a college education to each child is reduced to that of one remaining child, as two of his children had elected not to attend a four-year course of education after high school. Mr. Boucher's income, on the other hand, because of his generous military pension, had only been reduced by 22%. His liability, on the other hand, had dramatically decreased

by 50%. The chancellor did not abuse his discretion in dismissing Mr. Boucher's cross-petition.

### Self-Emancipation

■ Finally, appellant argues that he is no longer responsible for Holly's college expenses. He contends that, since his daughter claimed independent status for purposes of her financial aid, she had effectively "self-emancipated." The pertinent provisions of the consent decree of 1979 clearly mandate payment for college expenses. Emancipation was not an issue of the agreement. Attempts by Holly to reduce the financial burden of her father inured to his benefit. Therefore, we can have little sympathy for the argument that Mr. Boucher should escape his liability because of his daughter's attempt to reduce his liability.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.